**Holbrook BRADLEY et al., Plaintiffs,**

v.

**Henry A. KISSINGER et al., Defendants.**

**Civ. A. No. 76–0085.**

United States District Court,
District of Columbia.

June 30, 1976.

Ms. Zona F. Hostetler, Atty.-at-Law, Washington, D. C., for plaintiffs.

John R. Dugan, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

GESELL, District Judge.

This action is brought by ten Foreign Service employees of the Department of State or the United States Information Agency who have been or will be subject to mandatory retirement at age 60, pursuant to Section 632 of the Foreign Service Act of 1946, as amended, 22 U.S.C. § 1002 (FSA). The eleventh plaintiff is an organization purporting to represent both former and present Foreign Service officers subject to this retirement provision. The named plaintiffs seek to maintain the suit as a class action.

Plaintiffs' primary claim is that as a matter of statutory construction the age 60 retirement mandated by FSA has been superseded and repealed by the Age Discrimination in Employment Act of 1967, as amended in 1974, 29 U.S.C. § 633a (ADEA).[1] The complaint prays generally for declaratory and injunctive relief, as well as for

---

1. Alternatively, the complaint alleges violations of due process and equal protection, arbitrary and invidious classification, discrimination in application of existing regulations and failure of the Civil Service Commission properly to implement the Act.

reinstatement, back pay and other monetary relief pursuant to 29 U.S.C. § 633a(b) for persons already subjected to mandatory retirement. The parties have cross-moved for summary judgment on this question of statutory interpretation and plaintiffs have also moved for class certification which the federal defendants oppose. These motions were fully briefed and argued and are now before the Court for decision.

On April 13, 1976, the named plaintiffs filed a motion under Fed.R.Civ.P. 23(c)(1) for class action certification seeking to represent the following persons:

All Foreign Service Officers and Foreign Service Information Officers, age 40 or older, who have been, or are now employed by the defendant Department of State or the defendant United States Information Agency, and who in the past six years have been subjected to, or are subject in the future to, mandatory retirement at age 60, pursuant to the rules, policies and practices of the defendant agencies or pursuant to Sec. 632 of the Foreign Service Act of 1946, as amended, 22 U.S.C. 1002.

Plaintiffs seek certification of their case as a "(b)(2)" class action.

■ This putative class consists of two categories of plaintiffs: present employees and past employees who have already been mandatorily retired under FSA since 1974. As to the latter, the Court concludes that the group cannot be included in a class action here. The relief requested for these people consists of reinstatement and back pay pursuant to 29 U.S.C. § 633a(b). However, none of the named plaintiffs who purported to represent these individuals have complied with the statutory requirement that notice of intent to bring such a suit must be given to the Civil Service Commission within 180 days after the alleged unlawful practice, 29 U.S.C. § 633a(d). Since the jurisdictional prerequisite has not been satisfied by any of the named plaintiffs,

there is no representative of this group properly before the Court.[2] Moreover, since reinstatement is sought, the interests of such people may well conflict with those of present employees who are also defined as part of the class. *Cf., e. g., Freeman v. Motor Convoy, Inc.,* 409 F.Supp. 1100, 1113 (N.D.Ga.1976). Accordingly, past employees who have already been retired are not within a proper class.

■ As to the category of present employees, who seek declaratory and injunctive relief rather than the remedies created by the ADEA, certain of these individuals are sufficiently threatened with imminent mandatory retirement to entitle them to prosecute this suit. The only question, therefore, is whether they can maintain the case as a class action. Defendants, citing section 7(b) of the ADEA, 29 U.S.C. § 626(b), and section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), argue that a class action can never be brought for age discrimination in Federal Government employment. In support of this contention they rely primarily on *LaChapelle v. Owens-Illinois, Inc.,* 513 F.2d 286 (5th Cir. 1975), which held that Rule 23 class actions are inappropriate in age discrimination suits against private employers. *See also Schmidt v. Fuller Brush Co.,* 527 F.2d 532 (8th Cir. 1975). Plaintiffs correctly point out in response that there are significant differences between the governmental and private situations. In particular, the statutory section applicable to the Government, unlike that pertaining to private parties, does not provide that it is to be enforced under the Fair Labor Standards Act. Rather, it expressly provides that enforcement shall be by the Civil Service Commission, 29 U.S.C. § 633a(b), and that aggrieved persons may under appropriate circumstances file civil actions in Federal District Court, 29 U.S.C. § 633a(c, d). The Court need not resolve this issue, however, since it finds in any event that the record at this time does not support the certification of a class un-

---

**2.** The statute is open to the construction that every member of the class of past employees would have to meet this requirement, *cf. Freeman v. Motor Convoy, Inc.,* 409 F.Supp. 1100, 1114–16 (N.D.Ga.1976), but under the facts of the present case the Court finds it unnecessary to consider this question.

der Fed.R.Civ.P. 23. First, it is unclear whether plaintiffs have satisfied the basic requirement of numerosity and impracticability of joinder. Defendants dispute plaintiffs' estimate of the number of people involved, and the present record, without some discovery by plaintiffs, does not sufficiently inform the Court of the facts. This conclusion is also reinforced by the above determination that only present employees may be members of the class, which reduces even further the probative value of plaintiffs' preliminary appraisals. Moreover, as will be more fully discussed below, the mandatory age provision is part and parcel of a larger retirement system. Some employees may not object to being retired at age 60 in order to enjoy the benefits afforded by this system, and the interests of such people may well be jeopardized if plaintiffs prevail. Therefore, it cannot be said that there are common interests between the named plaintiffs and the members of the asserted class. Finally, even in the absence of a class, appropriate equitable relief can be fashioned, if warranted, which will as a practical matter protect those people plaintiffs seek to represent, and therefore it is unnecessary and inadvisable to encumber this suit with the burdens of a class action, *see, e. g., Berlin Democratic Club v. Rumsfeld,* 410 F.Supp. 144, 163–64 (D.D.C.1976). The Court thus concludes that class certification is inappropriate, at least at this time.

Accordingly, a class action cannot be maintained on the question of statutory interpretation that is now presented. Of course, this is without prejudice to a renewed motion at a later time or on the other issues in this case if they are to be litigated. And since the matter of a class action is of little practical consequence to the resolution of the substantive statutory issue or the granting of prospective declaratory or injunctive relief, the Court will proceed to consider the merits of plaintiffs' claim.

Section 632 of FSA (22 U.S.C. § 1002) provides:

> Any participant in the Foreign Service Retirement and Disability System, other than one occupying a position as chief of mission or any other position to which he has been appointed by the President, by and with the advice and consent of the Senate, who is not a career ambassador or a career minister shall, upon reaching the age of sixty, be retired from the Service and receive retirement benefits in accordance with the provisions of section 1076 of this title, but whenever the Secretary shall determine it to be in the public interest, he may extend such participant's service for a period not to exceed five years.

Section 15 of ADEA (29 U.S.C. § 633a) provides:

> (a) *All personnel actions affecting employees . . . in military departments* as defined in section 102 of title 5, United States Code, *in executive agencies as defined in section 105 of title 5, United States Code* (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Rate Commission, in those units in the government of the District of Columbia having positions in the competitive service, and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service, and in the Library of Congress *shall be made free from any discrimination based on age.*[3] (Emphasis added.)

Based on the conflict between these provisions, plaintiffs argue that the ADEA im-

---

**3.** 5 U.S.C. § 105 states:

> For the purpose of this title, "Executive agency" means an Executive department, a Government corporation, and an independent establishment.

5 U.S.C. § 101 states:

> The executive departments are: The Department of State . . . . .

5 U.S.C. § 104 states:

> For the purpose of this title, "independent establishment" means—(1) an establishment in the executive branch . . . which is not an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment; . . . . .

plicitly repealed this section of the FSA. Defendants disagree, contending that the two provisions are not in irreconcilable conflict since the FSA concerns only mandatory retirement at age 60 and does not affect the conceded applicability of the ADEA to all other personnel action. They also point out that the FSA is the more specific and narrow of the two statutes, thus making it unlikely that Congress intended to repeal it by subsequently enacting the ADEA.

■ The parties are in agreement that repeals by implication are disfavored. As the Supreme Court recently explained:

It is a basic principle of statutory construction that a statute dealing with a narrow, precise and specific subject is not submerged by a later-enacted statute covering a more generalized spectrum. "Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Morton v. Mancari,* 417 U.S. 535, 550–551 [94 S.Ct. 2474, 2482, 41 L.Ed.2d 290, 301]. "The reason and philosophy of the rule is, that when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute in general terms, or treating the subject in a general manner, and not expressly contradicting the original act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such a construction, in order that its words shall have any meaning at all." T. Sedgwick, Interpretation and Construction of Statutory and Constitutional Law 98 (2d ed. 1874).

. . . . .

The issue thus boils down to whether a "clear intention otherwise" can be discovered—whether, in short, it can be fairly concluded that the [later statute] operated as a *pro tanto* repeal of [the earlier one]. "It is, of course, a cardinal principle of statutory construction that repeals by implication are not favored." *United*

*States v. United Continental Tuna Corp.,* 425 U.S. 164, 168 [96 S.Ct. 1319, 1323, 47 L.Ed.2d 653, 658]. There are, however,

"two well-settled categories of repeals by implication—(1) where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. But, in either case, the intention of the legislature to repeal must be clear and manifest. . . ." *Posadas v. National City Bank,* 296 U.S. 497, 503 [56 S.Ct. 349, 352, 80 L.Ed. 351, 355].

. . . . .

The statutory provisions at issue here cannot be said to be in "irreconcilable conflict" in the sense that there is a positive repugnancy between them or that they cannot mutually coexist. It is not enough to show that the two statutes produce differing results when applied to the same factual situation, for that no more than states the problem. Rather, "when two statutes are capable of co-existence, it is the duty of the courts . . . to regard each as effective." *Morton v. Mancari, supra,* [417 U.S.] at 551 [94 S.Ct. at 2483, 41 L.Ed.2d at 301]. As the Court put the matter in discussing the interrelationship of the antitrust laws and the securities laws, "[r]epeal is to be regarded as implied only if necessary to make the [later enacted law] work, and even then only to the minimum extent necessary. This is the guiding principle to reconciliation of the two statutory schemes." *Silver v. New York Stock Exchange,* 373 U.S. 341, 357 [83 S.Ct. 1246, 1257, 10 L.Ed.2d 389, 400]. *Radzanower v. Touche Ross & Co.,* —— U.S. ——, ——, 96 S.Ct. 1989, 1992, 48 L.Ed.2d 540 (1976) (footnotes omitted).

Of particular significance here to this inquiry into presumed legislative intent is the fact that Congress has recently extended

the mandatory retirement provision of the FSA to cover certain Foreign Service officers or employees of the Agency for International Development, 87 Stat. 713, Pub.L. No.93–188, 1973 U.S.Code Cong. & Admin. News 781, 792–94.[4] By this action Congress expressly indicated its belief that the Foreign Service and Retirement System provided more favorable conditions for retirement than did the Civil Service Retirement and Disability Fund and that such advantageous treatment was warranted to compensate these people for some of the personal difficulties they suffered during overseas service, H.Rep.No.93–388, 93d Cong., 1st Sess., 1973 U.S.Code Cong. and Admin. News 2806, 2845–47. Such legislative action, affecting some 2500 individuals (*id.*) and undertaken contemporaneously with the 1974 extension of the ADEA to the Federal Government,[5] is surely expressive of legislative intent on the question of whether the mandatory retirement provision of the FSA was impliedly repealed by the 1974 amendments to the ADEA.

▮ The Court finds it unnecessary, however, to decide this issue as formulated by plaintiffs. Section 4(f) of the ADEA, 29 U.S.C. § 623(f), provides:

(f) It shall not be unlawful for an employer . . .

(2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual . . . .

This provision, which was part of the 1967 ADEA, is clearly incorporated in the 1974 amendment and thus applicable to the Federal Government, so that any personnel action falling within its terms cannot be

deemed to be "discrimination based on age," 29 U.S.C. § 633a(a). This view is expressly supported by the legislative history of the 1974 amendments. For example, as Senator Bentsen commented when he introduced the original bill (S. 3318) to extend the ADEA to federal employees:

Of course, Mr. President, I recognize the there are instances in which age is a legitimate factor in determining whether an individual should be hired or encouraged to retire. The Act of 1967 says very plainly that it is not unlawful for an employer to take any actions otherwise prohibited "where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business," or "*to observe the terms of a bona fide seniority system or any bona fide employee benefit plan—which is not a subterfuge to evade the purposes of this act.*"

*I am not concerned with situations that fall within these categories, but I am concerned about documented instances in which Government employees have been flatly told or indirectly pressured to retire solely because of their age . . . .* 118 Cong.Rec. 7745 (1972) (emphasis added).

The House Report similarly indicates that federal employees were entitled to the same protections that private employees had received under the 1967 Act:

The Committee expects that expanded coverage under the Age Discrimination in Employment law will remove discriminatory barriers against employment of older workers in government jobs at the Federal . . . government levels *as it has and continues to do in private employment.* H.Rep.No.93–913, 93d Cong., 2d Sess., 1974 U.S.Code Cong. and Admin. News 2850 (emphasis added).

---

**4.** *See also* 22 U.S.C. § 1229(c). This statute was passed in 1968, after the initial enactment of the ADEA but before the 1974 amendments making the Act applicable to the Federal Government.

**5.** The Foreign Assistance Act of 1973, of which the AID measure was a part, was passed by the

House on December 4, 1973, and by the Senate on December 5, 1973. The 1974 amendments to the ADEA, which were included in the Fair Labor Standards Amendment of 1974, were enacted by both the House and the Senate on March 28, 1974.

Thus the cases that have interpreted 29 U.S.C. § 623(f) as it applies in the private sector, *e. g., Brennan v. Taft Broadcasting Co.,* 500 F.2d 212 (5th Cir. 1974), are relevant here.

■ The Foreign Service Retirement and Disability System, 22 U.S.C. §§ 1061–1116, was originally enacted as part of the FSA and is administered by the Secretary of State in accordance with rules and regulations prescribed by the President. Central to the System is the annuity program described in 22 U.S.C. § 1076, which section is expressly cited and incorporated in the mandatory retirement provision, 22 U.S.C. § 1002. Under the controlling law this System, with its compulsory contributions by and annuity payments to participants in the program, is clearly a bona fide system or plan within the meaning of the statute. This also appears to have been at least the implicit view of Congress when it recently extended the System to include certain AID employees, *discussed supra.* Accordingly, under 29 U.S.C. § 623(f), the mandatory retirement provision of the FSA is not inconsistent with or in violation of the ADEA.

For the foregoing reasons, plaintiffs' motion to certify a class is denied. Defendants' motion to dismiss or for summary judgment on Count I of the complaint is granted, plaintiffs' cross-motion for summary judgment is denied, and Count I of the complaint shall be and hereby is dismissed.

A status conference to schedule further proceedings, if any, *see Massachusetts Board of Retirement v. Murgia,* —— U.S. ——, 96 S.Ct. 2562, 49 L.Ed.2d —— (1976), is set for 11:30 a.m. on July 13, 1976.

SO ORDERED.