**Donald R. MOYSEY, Plaintiff,**

v.

**Cecil D. ANDRUS et al., Defendants.**

Civ. A. No. 79–0269.

United States District Court,
District of Columbia.

Dec. 18, 1979.

David R. Berz, Randall L. Speck, Martha C. Salvant, Washington, D.C., for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Carl S. Rauh, U.S. Atty., Paul Blank-

enstein, Shirley Huang, Attys., Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

This case is before the Court on two motions by plaintiff and one by defendants. Plaintiff, Donald R. Moysey, a sixty-seven year old former Department of Interior employee, challenges certain Departmental practices as violative of section 15(a) of the Age Discrimination in Employment Act of 1967, 29 U.S.C.A. § 633a(a) (West Supp. 1979). He seeks not only to enjoin these practices, but also to receive retroactive relief. Mr. Moysey has moved for class certification and partial summary judgment. Defendants, the Secretary of the Department of Interior and the Director of the Office of Personnel Management ("OPM") (formerly the Civil Service Commission)[1] have cross-moved for summary judgment. The Court is persuaded that class certification is appropriate and, accordingly, it shall grant plaintiff's motion. The Court also finds that the certified class has been victimized by improper discrimination on the basis of age. Thus, it shall also grant plaintiff's motion for partial summary judgment.

## 1. BACKGROUND

On December 31, 1976, Donald R. Moysey, at age sixty-three, retired from his position as a Program Audit Manager with the Department of Interior. His retirement resulted from a physical disability produced by a heart condition. Upon leaving the Department, he commenced receiving an annuity from the Civil Service Retirement and Disability Fund ("the Fund"). See 5 U.S.C. §§ 8331(5) & 8348 (1976). Less than a year after his departure, Mr. Moysey's physical condition improved due to the installation of a new pacemaker. On December 2, 1975, he applied for a new position with the Department of Interior and he was eventually selected on an open competitive

basis for the job of Territorial and Financial Audit Officer. His appointment became effective on January 21, 1976. As a reemployed disability annuitant over age sixty, Mr. Moysey continued to receive his annuity in the form of a deduction from his salary. He did not contribute to the Fund during the period of reemployment. In December, 1976, Mr. Moysey was informed that he had been classified as a temporary employee, terminable at the will of the appointing authority; five months later, after learning that he was scheduled to be terminated on April 8, 1977, he left the Department.

Had Mr. Moysey been younger, he would have received different treatment from the Department. Disability annuitants who recover and return to work before reaching age sixty do not receive their annuities in the form of a pay deduction nor do they serve as temporary employees, terminable at will. In other words, reemployed disability annuitants who are younger are treated in the same manner as other employees whose service with the government has not been interrupted by illness. Mr. Moysey claims that this distinction on the basis of age violates section 15(a) of the Age Discrimination in Employment Act of 1965 ("the ADEA"), 29 U.S.C.A. § 633a(a) (West Supp.1979), and as part of his challenge to this practice, he seeks to represent a class comprising all retired disability annuitants, age sixty or over, who have been, or desire to be, reemployed in permanent federal positions. Defendants submit that their practice is mandated by the interrelationship of 5 U.S.C. §§ 3323, 8337 & 8344 and that these statutes were not repealed by section 15(a) of the ADEA. They urge the Court to grant their motion for summary judgment.

## II. CLASS CERTIFICATION IS APPROPRIATE

Plaintiff seeks to represent a class which would comprise:

---

1. Section 101 of the Reorganization Plan No. 2 of 1978, 43 Fed.Reg. 36037, established the Office of Personnel Management. Section 102 of the Plan transferred the functions of the U.S. Civil Service Commission to the OPM.

(1) All retired disability annuitants (as defined by 5 U.S.C. § 8331) who have been employed by the United States at any time after August 10, 1976, and who have been rehabilitated from their disability after they reached age 60; and

(2) All retired disability annuitants who now wish or may in the future wish to be reemployed by the United States in other than temporary positions or positions terminable at the will of the appointing authority and who have been or may be rehabilitated from their disability after they reach age 60.

He submits that certification is appropriate under Federal Rules of Civil Procedure 23(b)(1)(B) and 23(b)(2). Either retroactive or prospective relief would be possible with the proposed class. Defendants contend that certification is improper for two reasons. First, defendants submit that class action suits against the federal government are not permitted under the ADEA; second, they argue that even if such suits are allowed, the circumstances here do not support certification. Because the Court is unpersuaded by either of these arguments, on this matter of apparent first impression,[2] it shall grant plaintiff's motion.

A. *Class Certification is Permissible in ADEA Suits Against the Federal Government.*

■ Discrimination on the basis of age is banned by two sections of the ADEA. Section 4(a)(1) of the Act, 29 U.S.C. § 623(a)(1), prohibits discrimination by private sector employers; and section 15(a) bars the same conduct by most branches of the federal government. Section 15(a) of the ADEA, as amended in 1978, provides:

(a) All personnel actions affecting employees or applicants for employment who are at least 40 years of age (except personnel actions with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of Title 5, in executive agencies as defined in section 105 of Title 5 (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Rate Commission, in those units in the government of the District of Columbia having positions in the competitive service, and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service, and in the Library of Congress shall be made free from any discrimination based on age.

29 U.S.C.A. § 633a(a) (West Supp.1979).

Defendants submit that both of these provisions are controlled by the first sentence of section 7(b) of the Act, 29 U.S.C. § 626(b), which declares:

The provisions of this Act shall be enforced in accordance with the powers, remedies, and procedures provided in section 11(b), 16 (except for subsection (a) thereof), and 17 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 211(b), 216, 217), and subsection (c) of this section.

ADEA, Pub.L.No. 90–202, § 7(b), 81 Stat. 604 (1967) (codified at 29 U.S.C. § 626(b) (1976)). Thus, defendants conclude that section 216 of title 29, United States Code, should apply to Mr. Moysey's claim. Because this statute provides that no employee may become a party-plaintiff "unless he gives his consent in writing to become such a party," it has been uniformly read as establishing an "opt-in" requirement which is mutually exclusive with the federal rules regarding class actions. *See, e. g., LaChapelle v. Owens-Illinois, Inc.,* 513 F.2d 286, 289 (5th Cir. 1975).

---

2. Although two other courts have ruled that class actions against the government are not permitted under the ADEA, both decisions preceded the 1978 Amendments to the Act. *See Carter v. Marshall,* 457 F.Supp. 38 (D.D.C. 1978); *Russel v. Reed,* C. A. No. 77–53 (M.D.Ga. filed October 28, 1977). *See also Er-pelding v. Thornhill,* 13 Empl. Prac. Dec. (CCH) ¶ 11,463, at 6596 (E.D.Mich.1976) (allowing class certification without discussion); *Christie v. Marston,* 551 F.2d 1080, 1081 n. 6 (7th Cir. 1977) (reserving the question without discussion).

Plaintiff, however, relies on a recently enacted provision of the ADEA. Section 5(e) of the 1978 Amendments to the ADEA, Public Law No. 95–256, 92 Stat. 191, added a new subsection (f) to section 15 of the Act. The new subsection broadly provides:

(f) Any personnel action of any department, agency, or other entity referred to in subsection (a) of this section shall not be subject to, or affected by, any provision of this Act [29 U.S.C.A. § 633a(a) (West Supp.1979)], other than the provisions of section 12(b) of this Act [29 U.S.C. § 631(b)] and the provisions of this section.

29 U.S.C.A. § 633a(f) (West Supp.1979). Plaintiff interprets this provision of the statute as excluding age discrimination suits against the federal government from all the restraints which limit class certification in actions against other employers. The Court is persuaded that this construction, rather than defendants', is consistent with the legislative design.

Defendants argue that the sections of the Act which separately ban age discrimination by private and federal employers are both controlled by the procedural requirements of section 7(b), 29 U.S.C. § 626(b). This approach has only a superficial appeal. First, at the time section 7(b) was enacted, the ADEA did not extend to the federal government; only with the enactment of the 1974 Amendments was the present sweep of the statute realized. Public Law No. 93–259, § 28(b)(2), 88 Stat. 74 (1974). Even before the addition of section 15(f), the application of the "opt-in" requirement to suits against federal employers was uncertain. In *Bradley v. Kissinger*, 418 F.Supp. 64, 66 (D.D.C.1976), the court observed that under the ADEA.

[T]here are significant differences between the governmental and private situations. In particular, the statutory section applicable to the Government, unlike

that pertaining to private parties, does not provide that it is to be enforced under the Fair Labor Standards Act. Rather, it expressly provides that enforcement shall be by the Civil Service Commission, 29 U.S.C. § 633a(b), and that aggrieved persons may under appropriate circumstances file civil actions in Federal District Court, 29 U.S.C. § 633a(c, d).

The all inclusive language of subsection (f) has certainly clarified the matter by stating that all federal personnel actions "shall not be subject to, or *affected by, any* provision of this Act," other than sections 12(b) and 15. 29 U.S.C.A. § 633a(f) (West Supp.1979). The legislative history accompanying subsection (f) is clear. The House Report states, "Section 15 of the act which prohibits employment discrimination on account of age in Federal Government employment is complete in itself." H.R.Rep.No. 527, 95th Cong., 1st Sess. 11 (1977). The Conference Report, which adopted the House provision *in haec verba*, is even more explicit: "The House Bill also makes it clear that section 15 of the act relating to Federal employees is independent of any other section of the act, except section 12(b)." H.R. Rep.No. 950, 95th Cong., 2d Sess. 11 (1978) (Conf. Report), U.S.Code Cong. & Admin. News 1978, pp. 504, 532.[3]

To hold that the "opt-in" requirement of section 7(b) applies to attempts by private individuals to compel compliance with the ADEA would certainly render the allegedly improper "personnel action" "subject to, or affected by" section 7(b)—a result flatly proscribed by section 15(f). Defendants' contention that personnel actions can be neither "subject to" nor "affected by" a procedural requirement for the commencement of suit is unpersuasive. By insulating the federal government from other portions of the ADEA, subsection (f) is plainly intended to establish the OPM (formerly the Civil Service Commission) as a separate en-

---

**3.** Committee reports are "the most persuasive indicia of Congressional intent." *Housing Authority v. United States Housing Authority*, 468 F.2d 1, 7, n. 7 (8th Cir. 1972), *cert. denied*, 410 U.S. 927, 93 S.Ct. 1360, 35 L.Ed.2d 588 (1973); *See Zuber v. Allen*, 396 U.S. 168, 186, 90 S.Ct.

314, 24 L.Ed.2d 345 (1969); *United States v. International Union (UAW–CIO)*, 352 U.S. 567, 585–86, 77 S.Ct. 529, 1 L.Ed.2d 563 (1957); *Crown Central Petroleum Corp. v. FEA*, 542 F.2d 69, 74 (Em.App.1976).

forcement mechanism for federal employees. If this administrative enforcement process "affects" personnel actions, then a corrective suit by private citizens must certainly have a similar impact. Thus, in accordance with 29 U.S.C.A. § 633a(f) (West Supp.1979), the Court holds that 29 U.S.C. § 626(b)—and, through this statute, the "opt-in" requirement of 29 U.S.C. § 216(b) —does not apply to Mr. Moysey's suit. Accordingly, he may seek class certification under Federal Rule of Civil Procedure 23.

B. *Class Certification is Appropriate Under Federal Rules of Civil Procedure 23(b)(1)(B) and 23(b)(2).*

Plaintiff seeks class certification pursuant to Federal Rules of Civil Procedure 23(b)(1)(B) and 23(b)(2). Under the former, a class action is appropriate if separate suits would create a risk of "adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members." Rule 23(b)(2) authorizes class actions when "the party opposing the class has acted or refused to act on grounds generally applicable to the class." For both types of suits, the prerequisites set forth in Rule 23(a) must be satisfied. Before discussing the application of either subsection of Rule 23(b), the Court will determine whether plaintiff has satisfied the threshold criteria of Rule 23(a).

First, the proposed class would include hundreds of disability annuitants; this number is so large as to render joinder impracticable. In addition, there are questions of law common to the class and Mr. Moysey's claim is typical of that of other class members. Finally, even though Mr. Moysey, if he prevails, may eventually be competing with other class members for a limited number of federal positions, he may fairly and adequately protect the interests of the class. Suits under Rule 23(b)(1)(B) inevitably involve class representatives and class members competing for scarce, or limited, resources; the purpose of class adjudication under this provision is to present the Court with the entire matter, thereby pre-

cluding an award of individual relief which would ignore the interests of other similarly situated parties. Under such circumstances, some minor conflict is inevitable and the Court may find that a proposed representative will "fairly and adequately" protect the interest of his fellow class members even though such a conflict arises. Here, there is no evidence that Mr. Moysey has any interest inimical to the proposed group, other than the interest already discussed. Accordingly, the Court finds that Rule 23(a) has been satisfied.

In addition to Rule 23(a), plaintiff's proposed class also satisfies both Rules 23(b)(1)(B) and 23(b)(2). First, with regard to Rule 23(b)(1)(B), an adjudication of Mr. Moysey's claim will, in large part, be dispositive of the interests of other class members. The basic issue in this complaint is the legality of a uniform OPM employment practice; the resolution of this issue will determine the treatment of all other rehabilitated disability annuitants age sixty or older. *See Larionoff v. United States*, 365 F.Supp. 140, 143 (D.D.C.1973), *aff'd in rel. part*, 175 U.S.App.D.C. 32, 533 F.2d 1167 (D.C.Cir.1976), *aff'd*, 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977). Also, if reinstatement is held an appropriate remedy, there will be a limited number of federal jobs available and a much larger number of persons seeking employment. Second, certification under Rule 23(b)(2) is also appropriate. Defendant's employment policy constitutes a refusal "to act on grounds generally applicable to the class" and final injunctive relief may be awarded to the class as a whole.

In sum, the Court grants plaintiff's motion for certification of the proposed class and it shall allow conditional certification under Rules 23(b)(1)(B) and 239(b)(2).

III. BECAUSE DEFENDANTS' CONDUCT VIOLATES THE ADEA, PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT MUST BE GRANTED

The Court finds that defendants' treatment of plaintiffs is in violation of section

15(a) of the ADEA, and, accordingly, it must grant plaintiffs' motion for partial summary judgment. Before discussing the merits of plaintiffs' claim, the Court will briefly outline the OPM's retirement scheme, as it presently affects disability annuitants, and it will also provide a statutory history of the development of that scheme.

A. *Civil Service Retirement and Disability Annuitants.*

1. *The Statutory Scheme.*

The OPM's treatment of federal workers who are forced to retire as a result of disability is based primarily upon three statutes, sections 3323(b), 8337 and 8344 of title 5, United States Code.

First, section 8337(a) provides that a federal employee who has completed five years of civilian service may be retired either on his own application or that of his agency, if the OPM finds him disabled. A disability retiree receives an annuity from the retirement Fund, *see* 5 U.S.C. § 8337(b), and he is also subject to annual physical examinations until he reaches the age of sixty. 5 U.S.C. § 8337(c) (1976). Under 5 U.S.C. § 8337(d), however, the annuitant loses his annuity if, before sixty, he recovers or is otherwise restored to earning capacity.[4] The language of this provision rests at the heart of Mr. Moysey's claim; it provides:

> If an annuitant receiving disability retirement annuity from the Fund, before becoming 60 years of age, recovers from his disability, payment of the annuity terminates on reemployment by the Government or 1 year after the date of the medical examination showing the recovery, whichever is earlier. If an annuitant receiving disability retirement annuity from the Fund, before becoming 60 years of age, is restored to an earning capacity fairly comparable to the current rate of pay of the position occupied at the time of retirement, payment of the annuity terminates on reemployment by the

Government or 1 year after the end of the calendar year in which earning capacity is so restored, whichever is earlier. Earning capacity is deemed restored if in each of 2 succeeding calendar years the income of the annuitant from wages or self-employment or both equals at least 80 percent of the current rate of pay of the position occupied immediately before retirement.

5 U.S.C. § 8337(d) (1976). The statute contains no express provision for the treatment of those, age sixty or older, who recover their health or are restored to earning capacity. Defendants currently interpret section 8337(d) to *require* a disability annuitant who recovers at this point in life to continue receiving his annuity.

Sections 3323 and 8344 determine the status of all reemployed annuitants, including those who have recovered from disabilities. Section 3323(b) broadly provides that an annuitant "is not barred by reason of his retired status from employment in an appointive position for which he is qualified." In other words, all persons who are receiving annuities, whether through optional retirement, involuntary separation, or disability, may return to federal government. The last sentence of section 3323(b) provides that annuitants—*i. e.,* those who are receiving an annuity while they are reemployed—serve "at the will of the appointing authority." Because disability annuitants who recover before reaching sixty have their annuities terminated pursuant to section 8337(d), they do not fall within the scope of this last portion of section 3323(b). The OPM requires disability annuitants who recover or return to work after the age of sixty to continue to receive their annuities; thus, it regards this group, which comprises part of the plaintiff class, as within the scope of section 3323(b).

Section 8344 sets forth the principal rules for calculating the retirement benefits and salaries of annuitants who return to work. Subsection (a) provides, with certain excep-

---

**4.** The words "recovery" and "rehabilitation" are used throughout this opinion as a substitute for the physical or financial conditions which

warrant annuity termination under 5 U.S.C. § 8337(d).

tions, that a reemployed person receiving an annuity shall have an "amount equal to the annuity allocable to the period of actual employment . . . deducted from his pay." 5 U.S.C. § 8344(a) (1976). Thus, if an optional retiree receiving a $400 per month annuity returns to work at a salary of $1,000 per month, the employing agency will pay him $600.[5] R. Vaughn, Principles of Civil Service Law § 6.3[6], at 6–72 (1976). If the annuitant serves for at least one year, he becomes entitled to a supplemental annuity. 5 U.S.C. § 8344(a)(3)(A) (1976). Thus, upon separation from service, he may receive two payments, an annuity which he earned prior to reemployment and a supplemental annuity earned in the course of his later work. If the reemployment continues for at least five years, the annuitant acquires greater rights. He may elect to receive the supplemental annuity or to have all his rights redetermined as of the final date of departure. 5 U.S.C. § 8344(a) (1976). To earn the latter option, the annuitant must first deposit in the Fund the money that would have been withheld had he not been receiving an annuity. The advantages of a complete recomputation are clear: the new annuity is recalculated according to the law in effect at the time of the final separation from service; thus the annuity earned at the first retirement may be increased as a result of changes in the civil service laws. See R. Vaughn, supra, at § 6.3[6]; H.R.Rep.No. 336, 94th Cong., 2d Sess. 4 (1975).

There are two relevant exceptions to section 8344(a)'s plan of supplemental and recomputed annuities. First, section 8344(a)(1) exempts from the plan "a disability annuitant whose annuity is terminated because of his recovery or restoration of earning capacity." Termination of the annuity enables the disability retiree to return to work as a tenured employee with a right of recomputation. In addition, section 8344(a)(2) excludes from the scheme, "an annuitant whose annuity, based on an invol-

untary separation . . . is terminated under subsection (b) of this section." Section 8344(b) provides that this group shall lose their annuities upon reemployment. Thus, like recovered disability annuitants, they are entitled not only to permanent positions, but also to an annuity recomputed as of the date of final separation.

Defendants interpret the first exemption, section 8344(a)(1), as coextensive with section 8337(d), the provision which requires annuity termination if the disability retiree recovers before the age of sixty. Thus, under defendants' interpretation, *only* those who recover or return to work *before* age sixty fall within the first exemption from section 8344(a). Those who recover at age sixty or older do not have their annuities terminated and may only receive recomputation by working five years.

Although discussed by neither party to this case, the exemption for "involuntary separation" apparently also affects some disability annuitants. In 1976, Congress enacted legislation to clarify the application of section 8344 to reemployed annuitants. Act of September 3, 1976, Public Law No. 94–397, 90 Stat. 1201; see S.Rep.No. 877, 94th Cong., 2d Sess. 1 (1976); H.R.Rep.No. 336, 94th Cong., 1st Sess. 1 (1975). This legislation consisted primarily of subsections (a)(2) and (b) of section 8344 and it did not alter OPM practice. Indeed the purpose of Public Law No. 94–397 was to "affirm[ ] statutorily the practice established by civil service regulations." S.Rep.No. 877, *supra*, at 3, U.S.Code Cong. & Admin. News 1976, pp. 2118, 2120. House Report No. 336, was even clearer:

> The committee believes that the regulations of the Civil Service Commission [now the OPM] provide for a logical and equitable treatment of involuntarily separated annuitants who are reemployed by the Government. The reported bill, H.R. 3650, in effect, incorporates such regulations into the reemployment of section 8344 of title 5.

---

**5.** The agency must deposit the $400 difference—an amount equal to the employee's annuity—into the Treasury. *See* 5 U.S.C. § 8344(a) (1976). Thus, the Fund is not forced to subsidize the employment rolls of federal agencies. *See* H.R.Rep.No. 336, 94th Cong., 1st Sess. 4 (1975).

H.R.Rep.No. 336, *supra*, at 4. The rationale for treating involuntarily separated annuitants in the same manner as those who are disabled is simple: when a federal employee, who has lost his position through no fault or decision of his own (in contrast to an optional retiree), returns to work, he should not be deprived of retirement benefits available to his co-workers who were fortunate enough to serve without separation.

Although the term "involuntary separation" is not defined by statute, OPM regulations do provide the following definition:

> The term *involuntary separation* means any separation against the will and without the consent of the employee, other than separation for cause on charges of misconduct or delinquency. Examples are: Reduction in force; abolishment of position; lack of funds; expiration of incumbent's term of office; liquidation of an office or of an entire agency; inefficiency (unless due to the employee's misconduct); transfer of function outside the commuting area; *disability (provided the separation action is initiated by the agency)* ; . . . . Note, however, that whether a separation is involuntary depends upon all the facts in a particular case. . . .

Federal Personnel Manual Supplement 831–1, at S11–2(a) (1979) (emphasis added). This definition is incorporated in regulations governing the reemployment of annuitants whose retirement was based on involuntary separation. *Id.*, at S15–6(a). Thus, a disability retiree whose separation is initiated by the agency and who is eligible to receive an annuity under the "involuntary separation" regulations,[6] is entitled to the benefits of annuity termination upon reemployment. Apparently, this provision would even apply to a disability retiree, age sixty or older, whom the defendants had denied the benefits of termination pursuant to section 8337(d).

In sum, the OPM currently classifies reemployed disability annuitants in two basic groups. Those under sixty must have their annuities terminated upon recovery and they receive all the benefits that flow therefrom; those age sixty or over, must receive their annuities while reemployed and they not only serve at the will of the appointing agency, but also are denied recomputation unless they serve five years. Yet, all disability retirees, regardless of age, may have their annuities terminated upon reemployment if they qualify as "involuntarily separated" annuitants within the meaning of section 8344(b).

### 2. *Legislative History.*

The historical development of this system is instructive. Under the Civil Service Retirement Act of 1930 ("the CSRA"), the *only* annuitants eligible for reemployment were disabled or involuntarily separated retirees. Act of May 29, 1930, ch. 349, §§ 6 & 7, 46 Stat. 472–474. Section 6 of the Act required disability annuitants to take physical examinations "until reaching retirement age." *Id.* § 6, 46 Stat. 473. At the time, the general mandatory retirement age for federal employees was seventy. *Id.*, § 1, 46 Stat. 468. In addition, the Act provided that "[I]f an annuitant shall recover before reaching retirement age and be restored" to earning capacity, then his annuity shall terminate. *Id.*, § 6, 46 Stat. 473. Section 7 required the termination of annuities awarded involuntarily separated workers when they were reemployed. *Id.*, § 7, 46

---

**6.** These regulations provide:

> An employee under the retirement system who is involuntarily separated from the service is eligible for an immediate annuity if:
>
> (1) He or she has been employed under the retirement system for at least one year within the 2-year period immediately preceding the separation on which the annuity is based, and
>
> (2) He or she meets either of the following minimum requirements:

> (a) Attainment of age 50 and completion of 20 years of creditable service, including five years of civilian service, or
>
> (b) Regardless of age, has completed 25 years of creditable service, including five years of civilian service.

Federal Personnel Manual Supplement 831–1, at S11–1(a) (1979); *see* 5 U.S.C. § 8336(d) (1976).

Stat. 474. In 1942, the CSRA was liberalized to permit any annuitant to be reemployed, provided that the appointing authority first determined that the the applicant possessed "special qualifications." Act of January 24, 1942, ch. 16, § 2, 56 Stat. 15 (amending § 2(b) of the CSRA). Upon reemployment, all annuitants not only had their annuities terminated, but also became entitled to a complete recomputation of benefits at the time of final separation. *Id.*

Six years later, Congress re-examined the situation of disability annuitants. First, it amended section 6 of the Act to require disability retirees to receive physical examinations annually only "until reaching age sixty." Act of February 28, 1948, ch. 84, § 6, 62 Stat. 51 (amending § 6 of the CSRA). The amendments also provided that "[i]f an annuitant shall recover *before reaching age sixty* and be restored to" earning capacity, his payments shall cease. *Id.* (emphasis added). In addition, Congress added language concerning the reemployment of all annuitants:

> No person who is receiving an annuity under the provisions of this Act and who has reached the age of sixty years shall be eligible again to appointment to any . . . employment under the Government of the United States . . ., unless the appointing authority determines that he is possessed of special qualifications: *Provided*, That no deductions for the retirement fund shall be withheld from the salary, pay, or compensation of such person, but there shall be deducted from his salary, pay, or compensation otherwise payable a sum equal to the retirement annuity allocable to the period of actual employment: *Provided further*, That the annuity in such case shall not be redetermined upon such person's subsequent separation from the service.

*Id.* § 2, 62 Stat. 49 (amending § 2(b) of the CSRA). The Senate Report accompanying the law explained the purpose of this new provision:

> It is proposed that the same privileges of reemployment be continued except that if the person is age 60 or over, the annuity will continue to be paid during his reemployment and his salary, as an employee, reduced by the amount of annuity being received. The employee would acquire no additional retirement rights during such period of reemployment.
>
> This will result in a saving in administrative costs because of the elimination of dropping annuitants from the roll, recomputing annuities, and reentering annuitants on the roll. It will prevent inequities arising as a result of annuitants being reemployed primarily for the purpose of acquiring new or additional retirement rights.

S.Rep.No. 746, 80th Cong., 2d Sess. 3 (1948). Defendants interpret these remarks and the amended language concerning reemployment in general as applicable to reemployed disability annuitants who are age sixty or over.[7] Plaintiffs reject the proposition that this provision was ever intended to control the situation of rehabilitated disability annuitants, who are dealt with more explicitly in another portion of the Act.

In 1956, the Civil Service Retirement Act of 1930 was amended further. Although disability annuitants received the same treatment as earlier, *see* Federal Executive Pay Act of 1956, Public Law No. 854, § 401, 70 Stat. 750 (amending § 6 of the CSRA), provisions for the reemployment of other annuitants were liberalized. Reemployed annuitants became entitled to supplemental annuities under a plan similar to the present § 8344 of title 5, United States Code. *Id.*, 70 Stat. 757 (amending § 2(b) of the CSRA and designating it as § 13). In addition, reemployed involuntarily separated annuitants became entitled to the same "fresh start" permitted the recovered dis-

---

7. Defendants' interpretation of the 1948 legislation is further supported by the remarks of Senator Baldwin. During the debate on the floor of Congress, he explained, "Of course, the fundamental basis and purpose of the act is to keep a competent and needed Federal employee in the Federal Service as long as we can keep him, up until he is 60 years of age." 94 Cong.Rec. 1743 (1948) (remarks of Senator Baldwin).

ability annuitant. *Id.* Four years later, the predecessor to section 8344(a) was amended further to create the present right to annuity recomputation upon service of five years reemployment. Public Law No. 86–622, § 3, 74 Stat. 410 (amending § 13(b) of the CSRA); *see* H.R.Rep.No. 1916, 86th Cong., 2d Sess. 2–3 (1960). Also, in 1961, Congress passed legislation [8] granting certain reemployed involuntarily separated annuitants a right of recomputation on five years service. Public Law No. 87–350, § 5, 75 Stat. 771–772 (1961).[9]

Relevant legislative action occurred on three more occasions. First, in 1966, the Act, along with other laws relating to governmental organization, was revised, codified and enacted as title 5 of the United States Code. Public Law No. 89–554, 80 Stat. 378 (1966). From this codification emerged the section designations—3323, 8337 & 8344—which are currently in force. Second, in a decision which had a major impact on all federal workers, Congress opted in 1974 to extend the benefits of the ADEA to most governmental employees. Fair Labor Standards Act of 1974, Public Law No. 93–259, § 28(b)(2), 88 Stat. 79 (adding § 15 to the ADEA) (currently codified at 29 U.S.C.A. § 663a (West Supp. 1979)). The new law provided that "[a]ll personnel actions affecting employees or applicants for employment" in the government "shall be made free from any discrimination based on age." The statute was later narrowed to protect only those "who are at least 40 years of age." Age Discrimination in Employment Act Amendments of 1978, Public Law No. 95–256, § 5(a), 92 Stat. 191 (1978). Finally, in 1976, as explained previously, Congress amended section 8344 to extend, by statute, to involuntarily separated annuitants the same treatment upon reemployment as disability annuitants. Public Law No. 94–397, § 1(a), 90

Stat. 1202 (1976) (adding 5 U.S.C. §§ 8344(a)(2) & (b)); H.R.Rep.No. 336, 94th Cong., 1st Sess. 3, 5–6 (1975).

## B. *Defendants' Practice Violates the ADEA.*

■ Section 15(a) of the ADEA, 29 U.S.C.A. § 633a(a) (West Supp.1979), currently provides:

(a) All personnel actions affecting employees or applicants for employment who are at least 40 years of age (except personnel actions with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of Title 5, in executive agencies as defined in section 105 of Title 5 (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Rate Commission, in those units in the government of the District of Columbia having positions in the competitive service, and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service, and in the Library of Congress shall be made free from any discrimination based on age.

The plaintiff class contends that defendants treatment of reemployed disability annuitants who are age sixty or over violates this provision of the ADEA. The Court agrees.

Defendants submit that the distinction in treatment between disability retirees under the age of sixty and those who are older is mandated by statute. They interpret section 8337(d), which requires annuity termination upon recovery before sixty, as excluding termination for those who are older. This interpretation of section 8337(d) is further supported by a literal reading of sec-

---

**8.** This amendment affected involuntarily separated annuitants who were not covered by the 1956 revision. At the same time, the Act was also amended to allow recovered disability annuitants who were not reemployed by the federal government to regain their annuities upon reinjury. Public Law No. 87–350, § 4, 75 Stat.

771 (1961); *see* H.R.Rep.No. 961, 87th Cong., 1st Sess. 9 (1961).

**9.** Although the original amendment was only prospective, it was later made retroactive. Public Law No. 89–378, 80 Stat. 93 (1966); *see* S.Rep.No. 1069, 89th Cong., 2d Sess. (1966).

tion 8344(a)(1). Section 8344(a)(1) only exempts from annuity continuation upon reemployment a person "whose annuity is terminated *because of* his recovery or restoration of earning capacity." 5 U.S.C. § 8344(a)(1) (1976) (emphasis added). Theoretically, a person over sixty could terminate his annuity, at best, by exercising an option to terminate, while one who was younger and who would have no choice, could terminate only *because of* recovery. Defendants also argue that this interpretation was not impliedly repealed by section 15(a) of the ADEA. They contend that implied repeal is only inferred where two statutes are repugnant and, because these two statutes do not expressly conflict, there has been no such repeal. In any event, the Court also notes, "Where one statute is broader than the other, both occupying the same field, the specific controls the general to the extent of the conflict whether enacted before or after the broader statute." 1A Sutherland Statutory Construction § 23.09 at 230 N.12 (4th ed.1972). Finally, defendant OPM submits that in matters of statutory construction, a court must show "great deference to the interpretation given the statute by the officers or agency charged with its administration." *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Further, the court "need not find [the agency's] construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance of judicial proceedings." *Id.* (quoting *Unemployment Compensation Commission v. Aragan*, 329 U.S. 143, 153, 67 S.Ct. 245, 91 L.Ed. 136 (1946)). Such deference is especially appropriate when the agency is charged by Congress with the interpretation of the statutes at issue. *See* 5 U.S.C. § 8347(a) (1976).

Accepting defendants' contentions regarding the appropriate degree of deference, the Court is unpersuaded that their construction of the statutory scheme has a reasonable basis in law. *See Unemployment Compensation Commission v. Aragan*, 329 U.S. 143, 154, 67 S.Ct. 245, 91 L.Ed. 136 (1946). First, neither section 8337(d) nor section 8344(a)(1) directly address the treat-

ment of recovered disability annuitants age sixty or older; indeed, the CSRA is silent on this entire matter. Although defendants' interpretation of the CSRA, by itself, is reasonable, it fails to consider adequately the effect of the ADEA. Defendants different treatment of disability retirees solely on the basis of age flatly contravenes the broad proscription of section 15(a) of the ADEA, 29 U.S.C.A. § 633a(a) (West Supp. 1979). Moreover, application of the difficult doctrine of implied repeal, which alone might justify such treatment, is not proper here. Whenever possible, statutory provisions should be construed so as to be consistent with each other. *Citizens to Save Spencer County v. United States Environmental Protection Agency*, 195 U.S.App. D.C. ——, ——, 600 F.2d 844, 870 (D.C.Cir. 1979). This is done, not merely to ensure that no provision is rendered void, but also to afford the maximum possible effect to all provisions. *Id.*

Here the application of this fundamental rule of statutory construction requires a different reading of sections 8337(d) and 8344(a)(1). Although section 8337(d) clearly requires the termination of an annuity for a recovered person under sixty, it may be construed, in harmony with the ADEA, as granting those sixty or older an option to terminate. In other words, section 8337(d) allows disabled federal employees age sixty or over to continue to receive their annuities, regardless of recovery; section 15(a) of the ADEA, 29 U.S.C.A. § 633a(a) (West Supp.1979), however, proscribes a "personnel action" based on age which would deny this same class the benefits available to younger employees. Of course, upon reemployment, the older employees would have the option of terminating their annuities and would fall within section 8344(a)(1).

Section 8337(d) does not, in its express language, deny the plaintiff class any benefits offered to younger employees. The OPM is the party responsible for that denial and its conduct contravenes the ADEA. The two statutes must be read together to produce a result which contravenes neither. Under this result, the plaintiff class need

not be reemployed at the will of the appointing agency, nor denied a right of recomputation.

This harmonization of the CSRA and the ADEA is supported by the only case to review the OPM's treatment of reemployed disability annuitants, age sixty or older. In *Sakran v. Macy*, 218 F.Supp. 756, 759 (D.D.C.1963) (emphasis in original),[10] the court noted that the predecessor of 5 U.S.C. § 8347(c) authorized what was then the Civil Service Commission to "order or direct *at any time* such medical or other examinations as it shall deem necessary to determine the facts relative to the disability or dependency of any person receiving or applying for annuity under this chapter." This provision is still in force, *see* 5 U.S.C. § 8347(c), and it certainly empowers the defendant OPM to examine disability annuitants age sixty or older who voluntarily decide to return to reemployment on the same terms as their younger co-workers.

In sum, the defendants may not discriminate on the basis of age by denying certain reemployed disability annuitants the same benefits available to their younger counterparts. Section 8337(d) must be interpreted as granting this class of older workers an option: upon recovery, they may continue to receive their annuities or they may terminate payment in order to receive benefits currently available to those under the age of sixty. Because defendants' present interpretation of section 8337(d) overlooks the mandate of section 15(a) of the ADEA, plaintiffs' motion for partial summary judgment must be granted and defendants' motion for summary judgment denied.

## IV. CONCLUSION

In sum, the Court grants plaintiff's motions for class certification and for partial summary judgment. It finds that class certification is appropriate in age discrimination suits against the federal government and second, that the ADEA bars the OPM

from denying reemployed disability annuitants age sixty or older the same benefits available to their younger counterparts. The OPM's construction of the silence of the CSRA flatly contravenes the broad anti-discriminatory purpose of the ADEA and as a result, the OPM's reading lacks a rational basis in law.

An order in accordance with the foregoing will be issued of even date herewith.

---

10. The Court need not, and does not, determine the correctness of the holding in *Sakran v. Macy*, 218 F.Supp. 756 (D.D.C.1963), which was decided before the passage of the ADEA and which the defendant OPM has steadfastly rejected. *See* R. Vaughn, Principles of Civil Service Law § 6.3, [6], at 6-72 at n. 218 (1976).