J. Philip HELD, Plaintiff,

v.

NATIONAL RAILROAD PASSENGER
CORPORATION, Defendant.

Civ. A. No. 82–1717.

United States District Court,
District of Columbia.

Jan. 23, 1984.

Gregory C. Glynn, Glynn, Graham & George, Washington, D.C., for plaintiff.

John C. Morland, Nat. R.R. Passenger Assn., Washington, D.C., for defendant.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

Plaintiff, a 51 year old man, was employed as Manager, Reservations Control, by the National Railroad Passenger Corporation (Amtrak) from August 1972 until May 1981. Because of reduced funding, Amtrak terminated plaintiff, as well as a number of other employees in its Washington, D.C. headquarters, as part of a major reduction in force. Thereafter, plaintiff brought this lawsuit on behalf of himself and other similarly situated employees, alleging that Amtrak discriminatorily terminated his employment, and rejected his subsequent applications for employment, because of his age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. 21 § 621 *et seq.*, and the D.C. Human Rights Act, D.C.Code § 1–2512. Plaintiff also alleges that Amtrak breached its duties under Appendix C–2 to the National Railroad Passenger Corporation Agreement, the labor agreement executed pursuant to 45 U.S.C. § 565, by wrongfully denying him benefits and priority in rehiring.

Amtrak has filed the instant motion to dismiss on the grounds that plaintiff's ADEA claim is not maintainable as a class action, that his claims under Appendix C–2 are subject to binding arbitration, and that his D.C. Human Rights Act claim is not justiciable. Also pending before this Court is plaintiff's motion to compel discovery.

For the reasons stated below, Amtrak's motion to dismiss will be granted in part and denied in part, and plaintiff's motion to compel discovery will be granted in part and denied in part.

### I

■ Plaintiff's claims may not be maintained as a class action. Although the ADEA authorizes plaintiffs to bring actions on behalf of "similarly situated" employees, the class action procedures of Rule 23, Fed.R.Civ.P., are inapplicable in age discrimination actions. *Woods v. New York Life Insurance Co.*, 686 F.2d 578 (7th Cir.1982); *McCorstin v. United States Steel*, 621 F.2d 749 (5th Cir.1980); and *Bean v. Crocker National Bank*, 600 F.2d 754 (9th Cir.1979). Instead, section 7 of the ADEA, 29 U.S.C. § 626(b), directs that the procedures of section 16(b) of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b), shall govern age discrimination suits. Under the FLSA, persons who wish to become party plaintiffs must affirmatively "opt-into" the class by filing with the

court a written consent to join the action.[1] Section 16(b) provides in pertinent part:

No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed with the court in which such action is brought.

While conceding that the FLSA opt-in procedures apply generally to age discrimination cases, plaintiff argues that they do ply in this case because 29 U.S.C. § 633a(f) excludes actions against the federal government from the class action limitations of section 626(b), and through it the requirements of 29 U.S.C. § 216(b). See *Moysey v. Andrus*, 481 F.Supp. 850, 853 (D.D.C.1979). In support of this argument, plaintiff alleges, as he must in order for the exclusion to apply, that Amtrak is a federally controlled corporation.[2] Plaintiff lists the following facts as evidence of government control: (1) three out of Amtrak's nine board members are appointed by the President with the advice and consent of the Senate;[3] (2) not more than two of the members appointed by the President may be registered as members of the same political party; and (3) the federal government pays each board member who is not employed by the federal government $300 per day when that member is performing corporate duties. 45 U.S.C. § 543.

Amtrak was established by the federal government and is therefore a somewhat unique corporate entity. It is not, however, a government-controlled corporation for purposes of the ADEA. The Rail Passenger Service Act specifically provides that

[t]he Corporation will not be an agency or establishment of the United States Government.

45 U.S.C. § 541. The legislative history of the Act supports this statutory language. The House Report which accompanied the passage of the Act indicated that Amtrak is to operate as a private, for profit corporation.

For the purpose of providing intercity rail passenger service, a private, for profit corporation would be established under the District of Columbia Business Corporation Act. The corporation would *not* be an agency or establishment of the United States Government (emphasis in original).

H.R. 91–1580, *reprinted in* 1970 U.S.Code Cong. & Ad.News at 4739.

Nor does case law support plaintiff's contention. In *Rocap v. Indiek*, 539 F.2d 174 (D.C.Cir.1976), the Court of Appeals for this Circuit established the standard to be applied for determining whether a corporation is a government-controlled entity. The court relied on several indicia for finding adequate federal involvement and control of the Federal Home Loan Mortgage Corporation for Freedom of Information Act purposes, stating that the agency

is federally chartered, its Board of Directors is Presidentially appointed, it is subject to close governmental supervision and control over its business transactions, and to federal audits and reporting requirements. In addition the Corporation is expressly designated an "agency," and its employees are officers and

"executive agency" as "an Executive department, a Government Corporation, and an independent establishment."

1. Rule 23(c) provides for "opt-out" class actions in which class members who receive notice but do not request exclusion are bound by the court's judgment and are barred from filing individual claims. Moreover, in actions brought under subdivision (b)(1) or (b)(2), Rule 23 does not allow a class member to avoid the effect of the court's judgment by disassociating himself from the suit. See 3B Moore's Federal Practice ¶ 23.32[3].

2. Section 633a applies to "[a]ll personnel actions affecting employees ... who are at least 40 years of age ... in executive agencies as defined in section 105 of Title 5. Section 105 defines

3. In its opposition to Amtrak's motion to dismiss, plaintiff states that eight of the seventeen board members are appointed by the President. The statutory provisions upon which plaintiff relies, however, have been superseded by the Amtrak Improvement Act of 1981, 45 U.S.C. §§ 501 *et seq.* Congress amended section 543 by reducing the number of directors from 17 to 9 and by substituting new provisions relating to the composition and selection of such directors.

employees of the United States, for a number of purposes. Like other agencies, it is empowered "to make and enforce such by-laws, rules, and regulations as may be necessary or appropriate to carry out the purposes or provisions of [its enabling act]." [4]

After considering all the relevant factors, the Court concludes that Amtrak is not a government corporation for purposes of the ADEA and therefore not subject to the special provisions of section 633a. First, Amtrak is not federally chartered but is incorporated under the laws of the District of Columbia, 45 U.S.C. § 541. Second, only one-third of Amtrak's board of directors is presidentially appointed. Third, although Amtrak is subject to some governmental supervision, government officials do not direct the everyday affairs of Amtrak. Fourth, as discussed above, Congress has explicitly stated that Amtrak was to be a private corporation, not an agency of the government. Fifth, Amtrak employees are not officers and employees of the federal government, a fact that is particularly relevant because this lawsuit concerns the rights of employees vis-a-vis their employers. Sixth, Amtrak has no rulemaking authority. See also, *National Railroad Passenger Corp. v. Miller*, 358 F.Supp. 1321 (N.D.Kan.) *aff'd*, 414 U.S. 948, 94 S.Ct. 285, 38 L.Ed.2d 205 (1973); *Senther v. Amtrak*, 540 F.Supp. 557, 560 (D.N.J.1982).

For the reasons stated, plaintiff is not entitled to maintain this case as a class action because none of the persons whom he purports to represent have filed written consents with the Court as required by section 216 of the FLSA. However, plaintiff has requested that, in the event he is required to proceed under the FLSA class procedures, he be offered a reasonable opportunity to obtain consents from prospective class members to join the suit, and that request will be granted. Each person who wishes to join the class must file a written consent to be represented by plaintiff and to be bound by the final judgment in this action no later than thirty days from the entry of this order. See *Montalto v. Morgan Guaranty Trust Co.*, 83 F.R.D. 150, 152 (S.D.N.Y.1979). Anyone not filing within that period of time will not be included in the class.

II

This Court lacks subject matter jurisdiction over plaintiff's breach of contract claim in which he alleges that Amtrak failed to abide by the terms of Appendix C–2 to the National Railroad Passenger Corporation Agreement. Article XIII(b) of the Appendix provides:

In the event any dispute or controversy arises between the Corporation and an employee not represented by a Labor Organization with respect to the interpretation, application or enforcement of any provision hereof which cannot be settled by the parties within 30 days after the dispute arises, either party may refer the dispute to the Secretary of Labor for determination. The determination of the Secretary of Labor, or his designated representative, shall be final and binding on the parties.

Plaintiff contends that the use of the word "may" in Article XIII(b) means that arbitration before the Secretary is permissive rather than mandatory, and he further argues that because the agreement does not expressly state that arbitration is an exclusive or necessary remedy, he is not required to exhaust the contract grievance procedures set out in the Appendix.

In support of this contention that where "may" is used, arbitration is not mandatory, plaintiff cites *Nemitz v. Norfolk & Western Railway*, 436 F.2d 841 (6th Cir.) *aff'd*, 404 U.S. 37, 92 S.Ct. 185, 30 L.Ed.2d 198 (1971); *Deaton Truck Lines, Inc. v. Local Union 612*, 314 F.2d 418 (5th Cir. 1962). Plaintiff misconstrues the holdings of these cases. In *Nemitz*, the Sixth Circuit held that the use of the word "may" in

---

4. The Court went on to note, however, that the existence of any one of these characteristics, by

itself, would not be determinative. *Id.* at 180.

the arbitration clause "was permissive until such time as the union or the [employer] invoked arbitration." 436 F.2d at 849. The court stated that if either party had requested arbitration, then arbitration would have been required. But "[a]s neither the union nor the [employer] invoked arbitration, the clause remained permissive." *Id.* Likewise, in *Deaton Trucks,* the court construed "may" to give either aggrieved party the option to "require" arbitration. 314 F.2d at 422. Because Amtrak favors arbitration as a means to settling this dispute and has objected to this Court's jurisdiction, these cases are inapposite.

In *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), the Supreme Court interpreted a contractual provision governing grievances to require arbitration despite its "permissive" language.[5] The Court stated that:

Use of the permissive "may" does not of itself reveal a clear understanding between the contracting parties that individual employees, unlike either the union or the employer, are free to avoid the contract procedure and its time limitations in favor of a judicial suit. Any doubts must be resolved against such an interpretation.

379 U.S. at 658–59, 85 S.Ct. at 619. Moreover, the Court found that, contrary to the presumption that plaintiff advances here, unless the parties to the collective bargaining agreement "expressly agreed" that arbitration was not the exclusive remedy, a plaintiff would be precluded from bringing a court action. *Republic Steel Corp., supra,* 379 U.S. at 657–58, 85 S.Ct. at 618–619. See also, to the same effect, *Ceres Marine Terminals, Inc. v. International Longshoremen's Ass'n,* 683 F.2d 242, 246 (7th Cir.1982); *United Steel Workers of America v. Fort Pitt Steel Casting,* 598

F.2d 1273, 1279 (3d Cir.1979); *Local 771, L.A.T.S.E. v. RKO General, Inc.,* 546 F.2d 1107, 1116 (2d Cir.1977); and *Bonnot v. Congress of Independent Unions, Local # 14,* 331 F.2d 355, 359 (8th Cir.1964); and see *Prouty v. National Railroad Passenger Corp.,* 572 F.Supp. 200 (D.D.C.1983), where Judge June Green of this Court applied these principles to the very Amtrak arbitration procedure at issue here.

In short, the use of the word "may" in an arbitration agreement does not imply that the parties to the agreement have the option of invoking some remedy other than arbitration. Rather, "[t]he sole option an aggrieved party retained through use of the word 'may' was to abandon its claim." *Local 771, L.A.T.S.E. v. RKO General, Inc., supra,* 546 F.2d at 1116.

### III

Amtrak has moved to dismiss plaintiff's claim of discrimination under the District of Columbia Human Rights Act, D.C. Code Ann. § 1–2512, on the ground that plaintiff has proceeded before the D.C. Office of Human Rights and therefore cannot sue here. Under the D.C.Code, any person claiming to be aggrieved by an unlawful discriminatory practice may bring an action in any court of competent jurisdiction (§ 1–2556), or he may pursue that grievance with the Office of Human Rights (§ 1–2554). However, the jurisdiction of the courts and the Office of Human Rights is mutually exclusive. *Brown v. Capitol Hill Club,* 425 A.2d 1309, 1311 (D.C.App. 1981).

That does not help Amtrak, however. Plaintiff did file a complaint of discrimination with the Office of Human Rights, but he subsequently withdrew that complaint. This eliminated any conflict (D.C.Code § 1–2556), and he may maintain this judicial action.[6]

---

5. The section of the contract provided in pertinent part: "Any Employee who has a complaint *may discuss* the alleged complaint with his foreman in an attempt to settle it." *Republic Steel Corp. v. Maddox, supra,* 379 U.S. at 658, 85 S.Ct. at 619.

6. In a second motion to dismiss filed on November 28, 1983, Amtrak argues that plaintiff's D.C. Human Rights Act claim must be dismissed for two additional reasons: first, that the claim is time-barred under the applicable statute of limitations; and second, that the D.C. law claim is preempted by the federal claim under the

## IV

Plaintiff has filed two motions to compel discovery: one to compel answers to an interrogatory and another to compel Amtrak to produce documents for inspection and copying.

In the first set of interrogatories, plaintiff requested Amtrak to provide information concerning persons employed by Amtrak in May, 1981, at the vice presidential level and above. Amtrak objects to parts of this question for two reasons.

■ First, it argues that since plaintiff was employed only in Amtrak's marketing department, information concerning employees in its other 17 departments is irrelevant. That objection is not well taken. In the first place, contrary to Amtrak's position, its departmental structure is fluid, and supervisory personnel in other departments may well make decisions which potentially affect employees everywhere. Moreover, plaintiff has not sought information as to employees generally, but he has limited his request to only those employees at the vice presidential reporting level and above who worked at Amtrak's Washington, D.C. headquarters at the time of the RIF. Courts generally permit broad discovery in employment discrimination cases recognizing that

> Since direct evidence of discrimination is rarely obtainable, plaintiffs must rely on circumstantial evidence and statistical data, and evidence of an employer's overall employment practices may be essential to plaintiff's prima facie case.

*Morrison v. City and County of Denver*, 80 F.R.D. 289, 292 (D.Colo.1978); see also, *Hubbard v. Rubbermaid, Inc.*, 78 F.R.D. 631, 639 (D.Md.1978).

■ Amtrak also objects to disclosure of the last known addresses of the individuals identified in response to the interrogatory on the grounds that that information implicates a "privacy interest" and that it is irrelevant and immaterial. In other ADEA actions, courts have permitted plaintiffs to

communicate with other potential class members so as to obtain their consents to join the suit. See, *e.g.*, *Woods v. New York Life Insurance Co.*, 686 F.2d 578, 580 (7th Cir.1982); *Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335, 336 (2d Cir.1978); and *Bishop v. Jelleff Assoc.*, 4 FEP Cases 1262 (D.D.C.1972). In order to notify potential class members, plaintiff must know their identity and have some means with which to communicate with them. Accordingly, plaintiff's motion to compel Amtrak to disclose the names and addresses of those employees who were terminated as a result of the May 1981 RIF will be granted. However, this information may be used only to notify former Amtrak employees of this lawsuit and to invite them to join.

Plaintiff's second motion to compel discovery results from Amtrak's refusal to produce certain documents. In Request No. 7, plaintiff demands that Amtrak produce

> A copy of each letter of termination dated on or about May 28, 1981, identical in all material regards to [the letter received by plaintiff] sent or delivered by Amtrak on the indicated day.

Amtrak made available only copies of termination letters sent to marketing department employees, with the name and addresses excised to protect the recipients' privacy interests. The information is essentially the same information sought in plaintiff's interrogatory discussed above, and the Court grants the motion to compel production of documents pursuant to Request No. 7, but limits it to those persons employed in positions at the vice president reporting level or above in the Washington office.

■ In Request No. 14, plaintiff requests all "Amtrak organizational charts showing all positions in the chain reporting to William Norman from January 1, 1980 to the present," and in Request No. 25 copies of "all positions filled in grade 47 and

ADEA. Because the parties are still submitting briefs on these issues, the Court will rule on

defendant's second motion to dismiss at a later date.

above for which individuals were selected dating from May 1, 1981 to [the] current date." Amtrak objects to both of these requests because they seek information regarding departments other than the marketing department and are therefore irrelevant. The Court has already determined that plaintiff is entitled to discovery outside the marketing department, see p. 425, *supra.* Moreover, discovery of documents pertaining to events occurring after May 1981, when Amtrak terminated plaintiff, is appropriate since plaintiff has alleged that Amtrak refused to rehire him on account of his age. Accordingly, plaintiff's motion to compel production of these documents will also be granted.

■ Finally, plaintiff requests the personnel files of Eric von Schilgen and Mary LaBahn whom Amtrak selected for the positions of Senior Director, Sales Development and Manager, Interline & International Sales, respectively. Plaintiff concedes that he did not apply for either of these positions but argues that he is entitled to those portions of their files which bear on their selection because they are allegedly less experienced and less qualified than plaintiff. The Court will not grant his request. The relative qualifications of these two individuals is irrelevant because plaintiff never applied for and therefore was never considered for their positions. As for plaintiff's contention that, in order to prevent him from applying for these positions, Amtrak did not follow its normal posting and selection procedures when it filled these vacancies, it may be that he may be able to secure this information using other discovery devices, *e.g.*, interrogatories or depositions. But no showing has been made that the personnel files are needed.

## ORDER

For the reasons stated in the Memorandum filed this date, it is this 23rd day of January, 1984,

ORDERED That defendant's motion to dismiss plaintiff's class action claims and his claims under Appendix C–2 to the National Railroad Passenger Corporation Agreement be and it is hereby granted, and it is further

ORDERED That those persons who wish to join in this lawsuit shall file a written consent to be represented by plaintiff and to be bound by the final judgment in this action no later than thirty days from the entry of this order, and it is further

ORDERED That defendant's motion to dismiss plaintiff's D.C. Human Rights Act claim be and it is hereby denied, and it is further

ORDERED That plaintiff's motion to compel an answer to interrogatory No. 1 be and it is hereby granted, and it is further

ORDERED That plaintiff's motion to compel responses to requests for documents Nos. 7, 14, and 25 be and it is hereby granted, and it is further

ORDERED That plaintiff's motion to compel a response to Request No. 15 be and it is hereby denied, and it is further

ORDERED By the Court *sua sponte* that the above-entitled case be and it is hereby referred to the United States Magistrate for further discovery and pretrial. Unless otherwise ordered by this Court, contested preliminary motions within Local Rule 3–9 will likewise be heard by the Magistrate. All other motions will be heard by the Court.