The plaintiffs in two separate actions, ANCO TV Cable Company, Inc. ("ANCO"), and Granberry Ward, appeal from a summary judgment in favor of the defendants, Vista Communications Limited Partnership I and Vista Communications, Inc. (both hereinafter referred to as "Vista"), in an action to accelerate and recover on a promissory notes. We affirm.
In 1988, Vista acquired a television cable system from ANCO and Skyline TV Cable Company, Inc. ("Skyline"). To finance this venture, Vista executed notes dated September 9, 1988, to Fleet National Bank ("Fleet") in the principal amount of $3,500,000 and to Alta Subordinated Debt Partners LP I and Alta Subordinated Debt Partners LP II (Alta groups are hereinafter referred to as "Alta") in the aggregate principal amount of $1,300,000. On this same date, Vista executed three purchase money promissory notes, one to ANCO in the principal amount of $500,000 and two to Skyline in the principal amounts of $172,920 and $350,000. Skyline assigned its notes to Granberry Ward on December 29, 1988. Contemporaneously with the execution of the notes, ANCO and Skyline entered into essentially identical "Intercreditor and Subordination Contracts" with Vista for *Page 862 
the benefit of Fleet and Alta. In each contract, Vista and the respective purchase money lender agreed that its note(s) would be subordinate to those of Fleet and Alta (the "Senior Lenders"). On September 10, 1990, Vista defaulted on the Fleet and Alta loans. Later, on December 18, 1990, Vista defaulted on ANCO's and Skyline's notes.
Following the defaults, ANCO, for itself, and Ward, as assignee of Skyline, brought separate actions on December 20, 1990, to recover under the notes. The two actions proceeded through the court together. The court found that the senior notes were outstanding and unaccelerated, and, thus, that according to the subordinated notes and "Subordination Contracts," ANCO and Ward were prohibited from bringing these actions. The trial court entered a summary judgment for Vista against ANCO, appealed in case number 1920982, and for Vista against Ward, appealed in case number 1920986. In both appeals, the issue is whether the trial court correctly entered the summary judgment based on its interpretation of the subordinated notes and Subordination Contracts.
"In reviewing the disposition of a motion for summary judgment, we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact" and whether the movant was "entitled to a judgment as a matter of law." Bussey v. John Deere Co.,531 So.2d 860, 862 (Ala. 1988); Rule 56(c), A.R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v.SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98
(Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989).
Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413
(Ala. 1990).
In its motion for summary judgment, Vista contended that the subordinated nature of the notes owed to ANCO and Ward prevented any payment to ANCO and Ward so long as the senior notes remained outstanding and unaccelerated. To support its contention, Vista referenced Section 3(c) of the subordinated notes:
 "No payment on account of the principal of or interest on this Note shall be made if, at the time of such payment or immediately after giving effect thereto, there shall exist a default or an event of default with respect to any Senior Indebtedness or in the instrument or instruments under which the same is outstanding, permitting the holder or holders thereof (or any representative on behalf of such holder or holders) to accelerate the maturity thereof, unless and until such default shall have been cured or waived; provided, however that if a default or event of default shall have occurred and if the holders of the Senior Indebtedness shall have not accelerated the payment of the Senior Indebtedness within 360 days after the occurrence of such default or event of default, then, subject to the other provisions of this Note, after the expiration of such 360 day period and until such acceleration occurs (or if during such 360 day period the default or event of default is cured or is waived by the holders of the Senior Indebtedness, then after the time of such cure or waiver), the registered holders of this Note may, from time to time receive payments in respect of principal of and interest on this Note, including any accrued interest which was not paid as a result of or during such 360 day period, except that if such default or event of default is waived by the holders of the Senior Indebtedness or is cured and any other default or event of default occurs or shall have occurred, then no payment shall be permitted under the foregoing provisions of this sentence until the expiration of 360 days after such other default or event of default (or until the cure thereof or waiver thereof by the holders of the *Page 863 
Senior Indebtedness if such cure or waiver occurs during such 360 day period)."
(Emphasis added.)
Moreover, Section 3 of the Subordination Contracts substantiates the same default payment scheme as the subordinated notes. It states:
 "Limit on Right of Action. The Subordinated Lender, for itself and its successors and assigns, agrees for the benefit of the holder or holders of the Senior Indebtedness that so long as the Senior Indebtedness remains outstanding, the Subordinated Lender will not take any action to accelerate the payment of the Subordinated Indebtedness or to foreclose, execute upon, or otherwise realize on any security given by the Borrower to secure the Subordinated Indebtedness or any judgment obtained with respect to the Subordinated Indebtedness prior to the acceleration of the Senior Indebtedness by the holder thereof; provided, however, upon prior written notice to you, the Subordinated Lender may exercise the remedies available to it under, and as limited by the provisions of, Section 3(c) of the Note Subordination Provisions."
The provisions in both documents establish the conditions under which payments of the subordinated notes may be made if a default under the senior indebtedness has occurred and is continuing. In construing contracts, the court must give effect to the intention of the parties. World's Exposition Shows, Inc.v. B.P.O. Elks, No. 148, 237 Ala. 329, 186 So. 721 (1939). A court seeks to accord the contracts "a reasonable construction under the terms used by the parties who made them, and when the contracts contain several provisions, all are construed together so that a harmonious operation can be given to each."United States Fidelity Guaranty Co. v. Jacksonville StateUniv., 357 So.2d 952, 955 (Ala. 1978).
Moreover, where there is more than one writing involved in a transaction, the court interprets the writings together.Haddox v. First Alabama Bank of Montgomery, N.A.,449 So.2d 1226 (Ala. 1984) (citing Cole v. Yearwood, 241 Ala. 437,3 So.2d 1 (1941)). The trial court interpreted these provisions as disallowing payments of principal and interest on the notes for a 360-day period following any uncured or unwaived default. The trial court further construed the provisions as allowing ANCO and Ward to receive payments following this 360-day period if Vista made voluntary payments. Although ANCO and Ward agree with the trial court that the terms prohibit payment for 360 days following any uncured or unwaived default, they dispute the trial court's holding that the terms give Vista the discretion to make voluntary payments following this period. We agree with the trial court's holding that the term "may," in paragraph 3(c) of the subordinated notes, gives Vista the discretion to make such payments.
Paragraph 3(c) of the subordinated notes sets out the actions that the holders of the notes may take in case of default. It prohibits ANCO and Ward from accelerating, foreclosing, or even executing on the notes for a period of 360 days following default of the outstanding senior notes. However, the provision states that after this 360-day period "the registered holders [ANCO and Ward] may . . . receive payments in respect of principal and interest." According to Gyler v. Mission Ins.Co., 10 Cal.3d 216, 514 P.2d 1219, 110 Cal.Rptr. 139 (1973), and Hannon v. Myrick, 118 Vt. 428, 111 A.2d 729 (1955), the term "may" denotes to be able. The trial court interpreted this term as giving Vista the discretion to make principal and interest payments to ANCO and Ward if the 360-day period had passed. Applying the above definition, we also interpret this provision as giving Vista the right to make principal and interest payments following the stated period. Moreover, had the parties intended that the payments be mandatory, as ANCO and Ward contend, then we would reasonably expect language that vested in the holders of the notes a right to require payment.
In addition to disputing the interpretation of the term "may," ANCO and Ward contend that the summary judgment was improper because the trial court (1) ignored the last sentence of Section 3(b) of the subordinated notes, which allowed them to pursue all remedies otherwise permitted by applicable *Page 864 
law upon an event of default, (2) refused to allow them to accelerate and recover, and (3) found that Vista had standing to invoke the subordination provisions of the subordinated notes and Subordination Contracts. While we find no merit in these assertions, we address each in order.
ANCO and Ward argue that the trial court erroneously ignored the following sentence found in Section 3(b) of the subordinated notes:
 "Nothing contained herein is intended to or shall alter or impair, as between the undersigned and the registered holder of this Note, the obligation of the undersigned, which is unconditional and absolute, to pay to the registered holder of this Note the principal of, and interest on, this Note as and when the same shall become due and payable in accordance with its terms, or is intended to or shall affect (except to the extent specifically provided by this paragraph) the relative rights of the registered holder of this Note and creditors of the undersigned, other than the holders of Senior Indebtedness, nor shall anything herein or therein prevent the registered holder of this Note from exercising all remedies otherwise permitted by applicable law upon an Event of Default under this Note, subject to the rights, if any, under this section of the holders of Senior Indebtedness in respect of assets of the undersigned of any kind or character, whether cash, property or securities, received upon the exercise of any such remedy."
This sentence indicates that the parties intended ANCO and Ward to have the right to exercise all remedies permitted by applicable law in case of a default, subject to the rights of the holders of the senior indebtedness. Further, Section 3(c) of the Subordination Contracts and Section 3(c) of the subordinated notes evidence the parties' intent to protect the senior lenders by prohibiting payment for a 360-day period and giving Vista the discretion to make payments after the expiration of that period. Thus, in construing these provisions harmoniously, the trial court correctly concluded that ANCO and Ward's only possible remedies were to recover voluntary payments after the 360-day period expired.
Second, ANCO and Ward argue that they may recover accelerated payments because the 360-day period has expired. As stated previously, paragraph 3(c) of each note states that "the registered holders of this Note [subordinated note] may, from time to time receive payments in respect of principal of and interest on this Note, including any accrued interest which was not paid as a result of or during such 360-day period." This paragraph does not discuss acceleration. Moreover, the "from time to time" language is contrary to acceleration, because acceleration implies one payment of the outstanding obligation.Semmes Nurseries, Inc. v. McDade, 288 Ala. 523, 263 So.2d 127
(1972). The plain import of the language in paragraph 3(c) is that ANCO and Ward may receive more than one payment. Thus, we find no error in the trial court's determination that ANCO and Ward cannot accelerate payment under the notes.
Moreover, when this action was commenced, the 360-day period had not expired. The default on the senior loans occurred on September 10, 1990. ANCO and Ward began this action on December 31, 1990. Consequently, at the time of commencement, ANCO and Ward were not entitled to the relief that they sought under the terms of the notes.
Last, ANCO and Ward contend that Vista is not the proper party to assert the subordination provisions. However, they cite no legal authority for this proposition. "Where an appellant fails to cite any authority, we may affirm, for it is neither our duty nor function to perform all the legal research for an appellant." Henderson v. Alabama A M University,483 So.2d 392 (Ala. 1986) (quoting Gibson v. Nix, 460 So.2d 1346,1347 (Ala.Civ.App. 1984); Ala. R. App. P. 28(a). See also Stoverv. Alabama Farm Bureau Insurance Co., 467 So.2d 251 (Ala. 1985);Guyton v. Guyton, 469 So.2d 640, 641 (Ala.Civ.App. 1985)).
The judgment is due to be affirmed.
AFFIRMED. *Page 865 
MADDOX, SHORES, HOUSTON, STEAGALL, INGRAM and COOK, JJ., concur.