MURDOCK, Justice.
The Hanover Insurance Company (“Hanover”), Hudak & Dawson Construction Co., Inc. (“Hudak”), and Don Colvin d/b/a Colvin Plastering (“Colvin”) (hereinafter collectively referred to as “the appellants”) appeal from the Baldwin Circuit Court’s order granting a motion to stay, pending arbitration, the action filed against them by the Kiva Lodge Condominium Owners’ Association, Inc. (“Kiva Lodge”). We affirm the judgment of the trial court.
I. Facts
Kiva Lodge is an Alabama nonprofit corporation formed for the purpose of administering and maintaining the Kiva Dunes Clubhouse and • Condominium (“Kiva Dunes”) located in Gulf Shores. On’ March 28, 2009, Kiva.Lodge contracted with Hu-dak to be the general contractor for the *448 remediation of deficiencies in Kiva Dunes buildings that were allowing water to enter the buildings.[1] Hudak subcontracted the stucco and/or sealant portion of the work to Colvin. Hanover, as surety for Hudak, issued to Kiva Lodge a performance bond ensuring and/or securing the full performance of Hudak’s contractual obligations. Both Hanover’s performance bond and Colvin’s subcontract incorporated by reference the provisions of the contract between Kiva Lodge and Hudak.
The contract between Kiva Lodge and Hudak included a form contract entitled “General Conditions of the Contract for Construction, AIA[2] Document A201-1997” (“the form contract”). The form contract included two paragraphs that constituted the arbitration provision. Those paragraphs provided:
“§ 4.6.1 Any Claim arising out of or related to the Contract ... shall, after decision by the Architect after submission of the Claim to the Architect, be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Section 4.5.
“§ 4.6.2 Claims not resolved by mediation shall be decided by arbitration, which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect.”
(Emphasis added.)
Kiva Lodge and Hudak also executed an “Addendum to General Conditions of Owner-Contractor Agreement” (“the addendum”). The opening paragraph of the addendum expressly stated:
“This Addendum shall modify, delete from and add and replace by substitution to the ‘General Conditions of the Contract for Construction,’ AIA Document A201, 1997 between Kiva Lodge Condominium Owners’ Association, Inc. as Owner and Hudak and Dawson Construction Co., Inc. as Contractor. ... If and to the extent that this Addendum is inconsistent with the Standard Form of Agreement between Owner and Contractor, any attachments thereto, the Specifications and Contract Documents, and the Supplementary Conditions, this Addendum shall control.”
With regard to the arbitration provision in the form contract, the addendum provided for the following changes:
“4.6.1 Delete the word ‘shall’ in the second line and substitute in lieu thereof the words ‘may at the election of either party.’ Delete the second sentence in its entirety.
“4.6.2 Delete the word ‘shall’ in the first line and substitute in lieu thereof the words ‘may at the election of either party.’”
Accordingly, §§ 4.6.1 and 4.6.2, as modified by the addendum, read:
“§ 4.6.1 Any Claim arising out of or related to the Contract ... may at the *449 election of either party after decision by the Architect after submission of the Claim to the Architect, be subject to arbitration....
“§ 4.6.2 Claims not resolved by mediation may at the election of either party be decided by arbitration, which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect.”
(Emphasis added.) In addition, the addendum added a new paragraph to the form contract—designated paragraph 20—which stated:
“Notwithstanding anything in this Addendum to the contrary, either party may pursue any claim or dispute in a court of law, or through mediation and arbitration. This Agreement shall be governed by the laws of the State of Alabama.”
(Emphasis added,)
In May 2010, Hudak’s remediation work was deemed to be substantially complete by Kiva Lodge’s representative. In May 2010, Colvin issued a five-year warranty in favor of Kiva Lodge warranting that the stucco work was performed with “proper materials, workmanship, and arrangement.” On September 16, 2010, Hudak issued a five-year warranty in favor of Kiva Lodge, warranting that the labor and materials were in compliance with the contract and with applicable specifications.
In September 2012', Kiva Lodge informed Hudak and Colvin of leaks and bubbling in the stucco exterior of the buildings at Kiva Dunes caused by water intrusion. Kiva Lodge alleges that Hudak and Colvin failed to determine and/or disclose the course of the problems and the proper scope of repairs necessary. It also alleges that Hanover breached the terms of its performance bond by failing to promptly remedy the default, complete the work within the scope of the contract in accordance with the terms and conditions, or arrange for payment of an alternative contractor to complete the work.
On April 16, 2015, Kiva Lodge sued the appellants in the Baldwin Circuit Court. The complaint asserted claims of breach of warranty, negligence, and fraud/suppression. The complaint requested that Kiva Lodge’s claims be “referred to arbitration before the American Arbitration Association for an award of damages against [the appellants].”
On April 23, 2015, Kiva Lodge filed a motion to stay the proceedings pending arbitration of its claims. In support of its motion, Kiva Lodge submitted, the form contract, together with the addendum, along with an affidavit from Kiva Lodge’s president, Jim Edgemon, in which he asserted that the form contract evinced transactions involving interstate commerce.
On May 15, 2015, Hanover filed a motion to dismiss Kiva Lodge’s claims against Hanover on the ground that, under its performance bond, any claim must be initiated within two years following the date on which final payment to the contractor became due and Kiva Lodge had not met this deadline. Therefore, Hanover argued, all of Kiva Lodge’s claims against Hanover were time-barred pursuant to the terms of the performance bond.
Also in May 2015, Hudak and Colvin filed answers to the complaint opposing the motion to stay on the basis of the language in the addendum and denying the- substantive allegations of the complaint. In July 2015, Hanover filed an an *450 swer. to the complaint in which it also opposed the motion to stay by relying on the addendum while also arguing that Kiva Lodge’s demand for arbitration was.,untimely. Hanover also asserted cross-claims against Hudak and Colvin, alleging breach of contract, breach of warranty, and negligence and seeking subrogation against or indemnity from each of them in the event of an award in favor of Kiva Lodge.
On July 21, 2015, the circuit court heard arguments concerning Kiva Lodge’s motion to stay. On August 4, 2015, the circuit court entered an order that stated, in pertinent part: “Motion to Stay Pending Arbitration filed by [Kiva Lodge] is hereby granted. All parties are hereby ordered to arbitration.” The circuit court simultaneously issued a separate order staying Hanover’s motion to dismiss the claims against it pending arbitration.
On September 11, 2015, Hudak, Colvin, and Hanover timely appealed the circuit court’s order that effectively granted Kiva Lodge’s demand for arbitration.
II, Standard of Review
“ ‘[T]he standard of review of a trial court’s ruling on a motion to compel arbitration at the instance of either par-⅛ is a de novo determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review.’ Ex parte Roberson, 749 So.2d 441, 446 (Ala. 1999). Furthermore:
“ ‘A motion to compel arbitration is analogous to a motion for summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Id. “After a motion to- compel arbitration has been made and supported, .the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.’ ”
“Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000) (quoting Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n.1 (Ala. 1995) (emphasis omitted)).”
Vann v. First Cmty. Credit Corp., 834 So.2d 751, 752-53 (Ala. 2002).
IIL Analysis
The appellants do not dispute that a contract exists between Kiva Lodge and Hudak that references arbitration, that the contract evinces transactions affecting interstate commerce, or that the contract between Hudak and Colvin and the performance bond provided by Hanover incorporate by reference the contract between Kiva Lodge and Hudak. Instead, the appellants present three arguments as to why Kiva Lodge’s demand for arbitration should be denied. First, they contend that the arbitration provisions as modified by the addendum are permissive in nature rather than mandatory and that, therefore, Hudak, Colvin, and Hanover cannot be compelled to arbitrate. Second, they argue that Kiva Lodge's arbitration demand was untimely under the terms of the contract between Kiva Lodge and Hudak, Third, Hanover argues that, its cross-claims are not subject to the arbitration provision in the contract between Kiva Lodge and Hu-dak. We address each argument in turn.
A. Do the Changes- to the Form Contract Effected by the Addendum Impose Mandatory Arbitration or Permissive Arbitration?
The argument to which the appellants devote all but four pages of their appellate brief is that the addendum *451 changed the arbitration language in the form contract from mandatory arbitration to permissive arbitration. In other words, they argue that instead of the contract requiring that a dispute must be settled through arbitration if either party tenders a an arbitration demand, the arbitration provision as modified by the addendum permitted arbitration of a dispute only if both parties subsequently mutually agree to arbitrate the issue in question. See, e.g., Benihana of Tokyo, LLC v. Benihana Inc., 73 F.Supp.3d 238, 248 n.5 (S.D. N.Y. 2014) (explaining that “‘“Mandatory” arbitration requires arbitration if either of the parties elects to pursue it; “permissive” arbitration requires arbitration only with the consent of both parties.’” (quoting Travelport Global Distrib. Sys. B.V. v. Bellview Airlines Ltd., No. 12 Civ. 3483(DLC) n.2 (S.D. N.Y. Sept. 10, 2012) (unpublished decision)).
In support of this argument, the appellants observe that the addendum deliberately changed the word “shall” to “may at the election of either party” in both § 4.6.1 and § 4.6.2. They also emphasize that the addendum added a new paragraph, paragraph 20, which expressly states that “either party may pursue any claim or dispute in a court of law, or through mediation and arbitration.” The appellants contend that the change effected by the addendum in the unequivocally mandatory arbitration language in the form contract in combination with the actual words used in the addendum dictates that arbitration is not required but is available only if both parties agree to submit a dispute to arbitration.
For its part, Kiva Lodge contends that the plain language of the addendum dictates that arbitration of a dispute is mandatory if one party elects arbitration as the method for settling a dispute. It asserts that the statement in § 4.6.2 that “[c]laims not resolved by mediation may at the election of either party be decided by arbitration, which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association” plainly allows for arbitration at the election of either party. (Emphasis added.) In other words, Kiva Lodge argues that, once one party elects to submit a dispute to arbitration, arbitration of that issue becomes mandatory for both parties.[3] Kiva Lodge contends that this Court should affirm the circuit court’s judgment applying the “clear and plain meaning” of the language of the addendum.
In deciding the question presented, we start with certain basic concepts.
“The intention of the parties controls in construing a written contract, and the intention of the parties is to be derived from the contract itself, where-'the lan *452 guage is plain and unambiguous. Food Service Distributors, Inc. v. Barber, 429 So.2d 1025 (Ala. 1983). Likewise, in Flowers v. Flowers, 334 So.2d 856, 857 (Ala. 1976), this Court held that, absent evidence to the contrary, ‘the words of an agreement will be given their ordinary meaning.’ ”
Loerch v. National Bank of Commerce of Birmingham, 624 So.2d 552, 553 (Ala. 1993). Moreover, “[a]ll the provisions of a contract must be construed together so as to give harmonious operation to each of them, so far as their language will reasonably permit.” City of Fairhope v. Town of Daphne, 282 Ala. 51, 58, 208 So.2d 917, 924 (1968). In a related vein, “[a] court seeks to accord the contracts ‘a reasonable construction under the terms used by the parties who made them, and when the contracts contain several provisions, all are construed together so that a harmonious operation can be given to each.’ ” ANCO TV Cable Co. v. Vista Commc’ns Ltd. P’ship I, 631 So.2d 860, 863 (Ala. 1993) (quoting United States Fid. & Guar. Co. v. Jacksonville State Univ., 357 So.2d 952, 955 (Ala. 1978)).
The appellants are correct that our courts have stated that “[t]he word ‘shall’ is clear and unambiguous and is imperative and mandatory,” Ex parte Prudential Ins. Co. of America, 721 So.2d 1135, 1138 (Ala. 1998), but that, “[o]rdinarily, the use of the word ‘may’ indicates a discretionary or permissive act, rather than a mandatory act.” Ex parte Mobile Cty. Bd. of Sch. Comm’rs, 61 So.3d 292, 294 (Ala. Civ. App. 2010). See also Bowdoin Square, L.L.C. v. Winn-Dixie Montgomery, Inc., 873 So.2d 1091, 1098-99 (Ala. 2003) (stating that “this Court has long recognized that words such as ‘may ... denote permissive alternatives, not mandatory restrictions”).
The word “may” cannot, however, be viewed in isolation. This Court previously has noted:
‘“[T]he use of the word “may” in an arbitration agreement does not imply that the parties to the agreement have the option of invoking some remedy other than arbitration.’ Held v. National R.R. Passenger Corp., 101 F.R.D. 420, 424 (D. D.C. 1984) (emphasis added)] ‘Rather, “[t]he sole option an aggrieved party retained through use of the word ‘may was to abandon its claim.”’ Id. Such an interpretation ‘would render the arbitration provision meaningless for all practical purposes. If the parties to such an agreement intended for arbitration to be permissive, there would be no reason to include ... the arbitration provision in the contract, for the parties to an existing dispute could always voluntarily submit it to arbitration.’ Austin v. Owens-Brockway Glass Container, Inc., 78 F.3d 875, 879 (4th Cir.) (emphasis added), cert. denied, 519 U.S. 980, 117 S.Ct. 432, 136 L.Ed.2d 330 (1996). See also American Italian Pasta Co. v. Austin Co., 914 F.2d 1103, 1104 (8th Cir. 1990); Atkins v. Louisville & Nashville R.R., 819 F.2d 644, 648-49 (6th Cir. 1987) (language directing that disputes ‘may be referred by either party to an arbitration committee’ was mandatory); Bonnot v. Congress of Indep. Unions, Local No. 14, 331 F.2d 355, 359 (8th Cir. 1964); Deaton Truck Line, Inc. v. Local Union 612, 314 F.2d 418, 422 (5th Cir. 1962); McCrea v. Drs. Copeland, Hyman & Shackman, P.A., 945 F.Supp. 879, 881 (D. Md. 1996) (language directing that ‘either party may petition the ... court ... for an order compelling ... arbitration’ was mandatory); Block 175 Corp. v. Fairmont Hotel Mgmt. Co., 648 F.Supp. 450, 451 (D. Colo. 1986) (clause providing that ‘either party may serve upon the other a written notice stating that *453 such party desires to have the controversy ... reviewed by an arbitrator’ was mandatory); accord, Beaver Constr. Co. v. Lakehouse, L.L.C., 742 So.2d 159, 164-65 (Ala. 1999) (‘By definition, binding arbitration is ... a limitation on the right to litigate. In- other words, one party cannot litigate while the other party arbitrates.... Because, as a practical matter, arbitration and litigation of the same,subject matter are mutually exclusive, the plaintiffs’ interpretation of the [contract] is unworkable.’).”
Celtic Life Ins. Co. v. McLendon, 814 So.2d 222, 225 (Ala. 2001). See also Karl Storz Endoscopy-Am., Inc. v. Integrated Med. Sys., Inc., 808 So.2d 999, 1011 (Ala. 2001) (applying California law in enforcing as mandatory an arbitration provision that stated: “ ‘If within 30 days after the commencement of mediation, a resolution of the dispute has not been achieved, the dispute may thereafter be submitted by any party to binding arbitration under the commercial rules of the American Arbitration Association then in effect .... ’,”); Adcock v. Adams Homes, LLC, 906 So.2d 924, 927 (Ala. 2005) (relying on the reasoning in Storz to enforce as mandatory an arbitration provision that stated: “ ‘If, after conciliation, the [parties] disagree on any claimed defective items or resulting repairs in accordance with this warranty ..., [the parties] may request an impartial third party arbitration.’ ”).
Most cases throughout the country repeat the view expressed in McLen-don that use of the term “may” in an arbitration provision generally does not denote permissive arbitration because “the arbitration clause would be meaningless if it were construed as permissive. The parties to an agreement can- always consent to arbitration as a means of settling their disputes. A permissive arbitration clause is not necessary.” Orthopedic Physical Therapy Ctr., P.A. v. Sports Therapy Ctrs., Ltd., 621 A.2d 402, 403 (Me. 1993). See, e.g., American Italian Pasta Co. v. Austin Co., 914 F.2d 1103, 1104 (8th Cir. 1990) (holding that an arbitration provision stating that “ ‘[i]f both parties agree that a dispute ... cannot be settled ... then such dispute ... may be submitted to arbitration’ ” triggered mandatory arbitration); ZARS, Inc. v. LTS Lohmann Therapy Sys. Corp., No. 2:05-CV-198 TC (D. Utah Oct. 18, 2006) (unpublished decision) (concluding that “[t]he existence of the word ‘may does not by itself render the clause permissive. The clause states that ‘either party may refer the dispute for arbitration. It does not require that all parties agree to arbitration before that remedy is used.-It does not allow a veto of the other party’s choice. A better reading is that once a party submits the dispute for arbitration, the other party is bound to follow that course.”); New York Cross Harbor R.R. Terminal Corp. v. Consolidated Rail Corp., 72 F.Supp.2d 70, 76-77 (E.D. N.Y. 1998) (enforcing as mandatory an arbitration provision that stated: “ ‘Either party may ... refer any dispute or an event(s) of default ... to arbitration.’ ”); Freedman v. Comcast Corp., 190 Md.App. 179, 188, 196-97, 988 A.2d 68, 73-74, 78 (2010) (finding, with regard to an arbitration provision that stated that when a dispute arose “‘you Or Comcast may elect to arbitrate that Dispute in accordance with this Arbitration Provision rather than litigate the Dispute in court,’” that “the plain and common-sense reading of the 'clause ... is that if either party elects- to arbitrate the dispute, it must be arbitrated”); Feldman/Matz Interests, L.L.P. v. Settlement Capital Corp., 140 S.W.3d 879, 888 (Tex. App. 2004) (noting that “generally, an agreement to arbitrate is mandatory even though it contains permissive terms such as ‘may’ ”); TM Delmarva Power, L.L.C. v. *454 NCP of Virginia, L.L.C., 263 Va. 116, 121, 557 S.E.2d 199, 201 (2002) (concluding that “[hjere, the word ‘may’ is permissive, but it clearly means that either party has the discretion to choose arbitration if conciliation is not successful” and that, “once this discretion is exercised, arbitration is compelled under the agreement” and collecting cases concluding that “may” does not automatically denote permissive arbitration); Agnes-Sue Assocs. v. Cerino, No. CV NH 9007-3882 (Conn. Super. Ct. Oct. 1, 1990) (unpublished decision) (interpreting an arbitration provision that stated that if a dispute arose, “then either party may request that the matter be referred to Arbitration in which ev[e]nt an Arbitration Panel shall be convened by the AMERICAN. ARBITRATION ASSOCIATION” and concluding that the “provision clearly gives either party the right to demand arbitration and if one party demands it, then arbitration must be held. The arbitration clause makes no reference to the consent of both parties; arbitration is mandated if ‘either party requests it. The consent of the second party is not required.”).[4]
As Kiva Lodge observes, in key ways the arbitration provision in this case parallels the arbitration provision in Benihana of Tokyo, LLC v. Benihana Inc., 73 F.Supp.3d 238 (S.D. N.Y. 2014).In Benihana, a licensing agreement contained two paragraphs addressing arbitration that provided, in pertinent part:
“13.1 If this Agreement shall be terminated by Licensor and Licensee shall dispute Licensor’s right of-termination, or the .reasonableness thereof, the dispute shall be settled- by arbitration at the main office of the American Arbitration Association in the City of New York in accordance with the rules of said association ....
“13.2 In the event any other dispute arises between the parties hereto in connection with the terms or provisions of this Agreement, either party by written notice to the other party may elect to submit the dispute to binding arbitration in accordance with the foregoing procedure. Such right shall not be exclusive of any other rights which a party may have to pursue a course of legal action in an appropriate forum. ...”
73 F.Supp.3d at 244 (emphasis added).
Under the foregoing provisions, Beniha-na of Tokyo filed a motion to compel arbitration of claims it had filed in an action against Benihana of America after Beniha-na of America had filed several counterclaims against Benihana of Tokyo. The parties agreed that the dispute fell under § 13.2 of the licensing agreement rather than § 13.1 because the claims did not relate to termination of the agreement, but they disagreed as to whether § 13.2 contemplated mandatory or permissive arbitration. Benihana of America contended that § 13.2 “contemplates permissive arbitration” for threé reasons that are very similar to those the appellants present here. 73 F.Supp.3d at 244. First, Benihana of America noted that the first sentence of § 13.2 provided that “either party ... may elect to submit the dispute to binding arbitration,”. which Benihana of America argued is permissive language. Second, it *455 noted that the second sentence of § 13.2 referenced the right to arbitration not being “exclusive of any other rights” including “legal action in an appropriate forum.” Third, it contrasted the text of § 13.1, which used the mandatory term “shall” to require .disputes related to termination to be settled by arbitration, with the different language in § 13.2, and it argued that reading § 13.2 to require mandatory arbitration “ ‘would effectively read the phrase “shall not be exclusive” out of the agreement’ and ‘render meaningless’ the differences between Sections 13.1 and 13.2.” 73 F.Supp.3d at 249.
The Benihana court réjected each of those arguments. First, with regard to the use of the term “may” in the first sentence of § 13.2, the court observed that it
“merely means that neither party is obliged to initiate (‘submit a dispute to’) arbitration. The word ‘may* does not, however, mean that if a party has elected to do so, the other may neutralize that choice by insisting on litigating in court. To the contrary, courts have commonly construed such language as indicative of mandatory arbitration.”
73 F.Supp.3d at 249. After citing several eases in support of this conclusion, the court also observed that “Benihana America’s construction, under which only two-party consent could trigger arbitration, would make Section 13.2 meaningless.” 73 F.Supp.3d at 250.
Second, with regard to the second sentence of § 13.2 mentioning a right to pursue litigation, the court agreed that
“Benihana America is right that it ‘expressly allows the parties to bring non-termination claims in any forum, including this Court’ and that ‘[accordingly, arbitration of non-termination disputes is permitted, but not required.’ Def. Br. 6, This is so, in the sense that a party is free to initiate litigation and not to avail itself of the arbitration option. But that does not mean that arbitration is ‘permissive’ in the way that Benihana America claims, fe., permitting either party to negate, in favor of litigation in court, the other’s- submission of the case to arbitration. The more reasonable reading'of the second sentence is simply to underscore th'at a party is not obliged to initiate arbitration when a dispute, other than with regard to termination, arises ‘in connection with the terms or provisions of this Agreement.’ It does not provide that, if arbitration is sought by one party, the other may deflect that bid.”
73 F.Supp.3d at 250-51.
Third, with regard to the contrast between, the use of the word “shall” in § 13.1 and . the use of the word “may” in § 13.2, the. court disagreed with Benihana of America that reading § 13.2 as requiring mandatory arbitration rendered. § 13.2 indistinguishable from § 13.1.
“Section 13.1 expressly requires the arbitration of termination-related disputes, and subjects lawsuits relating to such disputes to dismissal on the grounds that the Agreement precludes them. In contrast, Section 13;2 permits, but does not require, ‘either party’ to submit ‘any other dispute ... in connection with the terms and provisions of this Agreement’ to arbitration.”
73 F.Supp.3d at 251. In short, § 13.2 “un-‘ derscores the right of a party to initiate suit in court, and in any appropriate forum, subject to, as provided in the first sentence, the right of ‘either party by written notice to the other party [to] elect to submit the dispute to binding arbitration.’” Id.
Like Benihana of America, the appellants contend that the language in the arbitration provision as modified by the addendum is permissive because it pro *456 vides that “[c]laims ... may at the election of either party be decided by arbitration.” They emphasize the statement in paragraph 20 that “either party may pursue any claim or dispute in a court of law, or through mediation and arbitration,” just as Benihana of America pointed to language addressing a “right” to “legal action in an appropriate forum.” Finally, the appellants draw a contrast between the use of the term “shall” in the arbitration provision in the form contract and the use of the term “may” as changed by the addendum just as Benihana of America contrasted the language in § 13.1 and § 13.2 of the licensing agreement.
The Benihana court’s reasoning is persuasive. A plain reading of the arbitration provision as modified by the addendum indicates that either party has the option to pursue resolution of a dispute in arbitration. The paragraphs that constitute the arbitration provision say nothing about mutual consent being required to invoke arbitration. In contrast, § 4.6.2 does specifically mention that arbitration will be “in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association” “unless the parties mutually agree otherwise.” (Emphasis added.) Thus, it is reasonable to conclude that if mutual consent was required to arbitrate it would have been explicitly mentioned. Paragraph 20 “underscorejs] that a party is not obliged to initiate arbitration” but, instead, that each party has available at the outset the avenues of mediation and litigation. “It does not provide that, if arbitration is sought by one party, the other may deflect that bid.” 73 F.Supp.3d at 251. It is true that the modification of the arbitration-provision language in the form contract by the addendum could be explained by a desire to make arbitration entirely permissive in the sense that it would require mutual consent to arbitrate, but the parties could have deleted the arbitration provision altogether in the addendum, and they still would have retained a mutual right to arbitration of disputes. The changes in the addendum retain more meaning if it is assumed that they stemmed from the parties’ desire to provide that arbitration is not the only initial avenue available to the parties for resolution of disputes in contrast to the language in the form contract in which “the parties committed ... dispute[s] to resolution only in an arbitral forum.” Id.
Based on the foregoing reasoning and authorities, we conclude that the addendum provides that once a party elects arbitration as a method for resolution of a dispute—as Kiva Lodge did in this case— the other party cannot neutralize that choice by insisting on litigating in court as the appellants attempt to do here. In short, Kiva Lodge has proven the existence of a binding mandatory arbitration agreement between the parties.
B. Was the Arbitration Demand Untimely?
The appellants contend that, under the terms of the contract between Kiva Lodge and Hudak, the action was not timely filed. Section 4.6.3 of the form contract provides:
“A demand for arbitration shall be made within the time limits specified in Sections 4.4.6 and 4.6.1 as applicable, and in other cases within a reasonable time after the Claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such Claim would be barred by the applicable statute of limitations as determined pursuant to Section 13.7.”
Section 13.7 provides that for “acts or failures to act” after the issuance of the final certificate of payment, the applicable stat *457 ute of limitations commences not later than
“the date of any act or failure to act by the Contractor pursuant to any Warranty provided under Section 3.5, the date of any correction of the Work or failure to correct the Work by the Contractor under Section 12.2, or the date of actual commission of any other act or failure to perform any duty or obligation by the Contractor or Owner, whichever occurs last.”
The appellants note that under § 6-5-221, Ala. Code 1975, there is a two-year statute of limitations for claims resulting from a construction defect. They further observe that Kiva Lodge filed its complaint, together, with its arbitration demand, on April 16, 2015. They contend, however, that evidence shows that Kiva Lodge’s claims accrued, at the latest, by September 11, 2012. Accordingly, the appellants argue that Kiva Lodge’s action is untimely under the terms of the contract and the provisions of Alabama law.
Kiva Lodge counters that whether its claims are barred by the applicable statute of limitations is a matter for the arbitrator, not the circuit court, and thus that the circuit court was correct in not ruling on that issue.[5]
In Dudley, Hopton-Jones, Sims & Freeman, PLLP v. Knight, 57 So.3d 68, 70-71 (Ala. 2010), this Court explained that “[t]he issue whether [a party’s] claims [are] barred by the applicable statutes of limitations ... is wholly unrelated to whether a valid agreement to arbitrate exists or whether the identified dispute falls within the scope of that agreement; accordingly, [that] argument[ ] do[es] not implicate matters of substantive arbitrability.” 57 So.3d at 70-71. The Court further explained that a statute-of-limitations defense “relate[s] to the ultimate viability of [a party’s] claims—not to the availability of arbitration—and [it] should accordingly be considered and ruled upon by the arbitrators, not by the circuit court.” Id. Therefore, the appellants’ argument that Kiva Lodge’s claims are time-barred must be decided by the arbitrator. The circuit court did not err in declining to deny the motion to stay the action pending arbitration on this basis.
C. Are Hanover’s Cross-Claims Subject to Arbitration?
Hanover argues that its cross-claims against Hudak and Colvin alleging indemnity, breach of contract, negligence, and breach of warranty are not subject to arbitration because they do not arise from the contract between Kiva Lodge and Hu-dak that contains the arbitration provision. Instead, they are based on an indemnity agreement that does not contain an arbitration provision.
Kiva Lodge essentially concedes that Hanover’s cross-claims are not subject to arbitration. It argues, however, that the circuit court simply issued a stay of Hanover’s claims because Hanover’s “cross-claims are contingent on the resolution of Kiva’s claims in arbitration.” Kiva Lodge notes that the circuit court has discretion to stay nonarbitrable claims pending arbitration of related claims. See, e.g., Porter v. Williamson, 168 So.3d 1215, 1220 n.6 (Ala. 2015) (observing that “the trial court has the discretion to order a stay of the nonarbitrable claims”).
In response to Kiva Lodge’s argument, Hanover concedes that a stay of nonarbi-trable claims is within the circuit court’s *458 discretion, but it contends that “there is no basis for the trial court to order a stay of its claims in this case, and that to allow such a stay here would be an abuse of discretion,” Hanover does not provide any further rationale for this position.
Given that the parties agree that Hanover’s cross-claims are not subject to arbitration and given that Hanover does not dispute that its cross-claims are contingent on Kiva Lodge’s claims against the other defendants—-claims that are subject to arbitration—the circuit court did not exceed its discretion in staying Hanover’s cross-claims. Indeed, a stay is judicially efficient. We conclude that the circuit court did not commit reversible error on this issue.
IV. Conclusion
Kiva Lodge’s claims against Hudak, Col-vin, and Hanover are subject to mandatory arbitration under the language of the contract between Kiva Lodge and Hudak, Accordingly, the circuit court did not err in granting Kiva Lodge’s motion to stay the action pending arbitration. The appellants’ statute-of-limitations defense is an issue that should be submitted to and decided by the arbitrator. It also was reasonable for the circuit court to stay Hanover’s cross-claims pending the arbitration of Kiva Lodge’s claims. Therefore, the judgment of the circuit court is affirmed.
AFFIRMED.
Bolin, Parker, Main, and Bryan, JJ., concur.
Wise, J., recuses herself.

. The remediation at issue in this case stems from a prior action filed by Kiva Lodge in 2006 against Doster Construction Company, alleging that, when Doster originally built Kiva Dunes, it did so in a manner that resulted in leaks that caused damage to the individual units and common areas. Kiva Lodge's case against Doster was litigated for several years and was dismissed in 2009 after the parties entered into a settlement agreement.

. "AIA” is an acronym for the American Institute of Architects.

. Kiva Lodge also makes the unusual argument that we cannot look at the original language of the arbitration provision in the form contract because it constitutes "extrinsic evidence” that was part of the negotiations and was not the final agreement between the parties, The fact is, however, that "where there is more than one writing'involved in a transaction, the court interprets the writings together.” ANCO TV Cable Co. v. Vista Commc'ns Ltd. P'ship I, 631 So.2d 860, 863 (Ala. 1993). The form contract is part of the parties' agreement, not extrinsic evidence. The changes made in' the addendum could not even be understood without reference to the original language in the form contract. Moreover, as the appellants note, this Court previously has examined language deleted from a contract by the parties in an effort to ascertain the parties' intent with regard to arbitration. See Ex parte Mountain Heating & Cooling, Inc., 867 So.2d 1112, 1117 (Ala. 2003) (asking "why would the parties bother striking the jury-waiver sentence if they had agreed to arbitrate disputes anyway?”).

. There are a few cases in which courts have concluded that the use of the word “may” in an arbitration clause meant the parties intended permissive arbitration. See Retractable Techs. Inc. v. Abbott Labs. Inc., 281 F.App’x 275, 275-76 (5th Cir. 2008) (not selected for publication in the Federal Reporter); PCH Mut. Ins. Co. v. Casualty & Sur., Inc., 569 F.Supp.2d 67, 75-76 (D. D.C. 2008); A. Dubreuil & Sons, Inc. v. Town of Lisbon, 215 Conn. 604, 610-11, 577 A.2d 709, 713 (1990). The appellants cite the last one, A. Dubreuil. As applied to the contractual language here, we consider the cases cited in the text to be the better reasoned opinions.

. Kiva Lodge also contends that the appellants are incorrect concerning the date on which its claims accrued, but we see no need to discuss that argument, given our disposition of this issue.